NEUMEISTER, Respondent, vs. GODDARD, Appellant.

*April 6—May 2, 1905.*

*Boundaries: Deeds: Reference to a plat: Evidence of actual location: Waters: Diversion of stream causing injury to adjoining owner: Instructions to jury: Evidence: Appeal and error: Correction of erroneous remarks by court: Requests for instructions to jury: Damages.*

1. Where lands are conveyed according to a plat, such plat, with its notes, lines, descriptions, and landmarks, becomes as much a part of the deed of conveyance and as controlling as if such descriptive features were written out on the face of the deed.
2. In such case reference in the deed to the plat does not preclude evidence by a surveyor, or any one else, to show where the

lines or boundaries actually lie or fall upon the land so attempted to be described.

3. In an action for injuries to land caused by the construction of a ditch, whereby the waters of a stream were alleged to have been diverted and caused to flow onto plaintiff's adjoining land, one of the questions was, whether the ditch, or any part of it, was constructed on plaintiff's land. In its charge to the jury the court, after giving the foregoing propositions, in substance instructed the jury that, in order to determine whether any part of the ditch was on plaintiff's land, all the evidence should be considered—not only defendant's deed and accompanying plat taken together, but the evidence of the surveyors, parties, and witnesses as to whether this ditch was wholly upon defendant's land or partly upon the land of each party; and that if they believed, under all the evidence, that part of the ditch was on plaintiff's land, or that the dirt was thrown therefrom upon some of plaintiff's land, then the defendant was liable for the actual injury by cutting that particular land of plaintiff and building the ditch upon a portion of it, provided they should believe that this ditch was dug or placed there without the consent, license, or permission of the plaintiff; that, in so charging, the court had reference to damage or injury to the plaintiff at this particular point, and then only upon condition that they should first find that a portion of the ditch was upon the plaintiff's land without consent, license, or permission. *Held*, that there was therein no error prejudicial to defendant.

4. In such case the evidence, stated in the opinion, is *held* sufficient to require submission to the jury of the question whether the ditch, or some part of it, was located on plaintiff's land.

5. Suggestions by the court during the taking of the testimony, erroneous and inconsistent with the charge to the jury, are *held* eliminated by the instructions actually given to the jury.

6. An action by a wife to recover damages for constructing a ditch upon her land is not to be defeated merely by a parol license given by the husband four years previously, and more than two months before she acquired title.

7. In an action for injuries to land caused by the construction of a ditch or dike, whereby the waters of a stream were alleged to have been diverted and caused to flow upon plaintiff's adjoining land, the court charged the jury, among other things, in substance, that, if they found from the evidence that the ditch or dike was wholly upon defendant's land, then they should determine whether the defendant had kept and maintained the same, from time to time, prior to the commencement of the action, so as to prevent the waters of the stream from coming upon plaintiff's

land; that under the law the defendant was bound to see, from time to time, either that the ditch or dike, or the dike and ditch combined, were sufficient to carry away the water, so as not to come upon plaintiff's land under all ordinary circumstances and conditions; and refused to instruct: "If the defendant dug the channel on his own lands there can be no recovery except the defendant has been guilty of some negligent act to which the plaintiff has not actually or impliedly consented," and "If the ditch was on defendant's land, and he used reasonable and ordinary care to guard against injury to plaintiff, he is not liable. If the embankment washed out from natural causes the defendant could not reasonably have foreseen and guarded against, he is not liable if the dike was on his own land." *Held:*

(1) Such requested instructions should have been given, since they were applicable to a point material to the issues and the evidence, and not covered by the general charge.

(2) The portion of the charge above referred to was misleadleading, since a proprietor may change the whole course of a stream within the limits of his own land, provided he restores the water undiminished to the original channel before leaving his premises, and, if he has exercised reasonable care and foresight, he cannot be held liable for injuries resulting from unforeseen causes.

8. Where the court expressly charged the jury that they must not consider any damages subsequent to the date of the commencement of the action, no error can be assigned because the testimony was not strictly limited to such damages as accrued prior to that date.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Reversed.*

This action was commenced July 31, 1903. The complaint, as amended, alleges, in effect, that at the time of the commencement of the action, and for three years immediately preceding, the plaintiff was the owner of the 214.75 acres of land described; that during the time there was a large, strong stream of water, known as the La Crosse river, running along the northerly line of a portion of said land, and had so flowed from time immemorial; that during the autumn of 1902 the defendant wrongfully, negligently, and unlawfully diverted

said stream from its natural course, and dug away the banks thereof on and along the plaintiff's land so that said stream, when slightly swollen, would and did run in great quantities and with great velocity into, upon, and over the plaintiff's said land; that since January 1, 1903, and up to and including the present time, said stream, by reason of such diversion thereof, has flowed into and upon the plaintiff's said land, and carried and deposited thereon great quantities of sand and other *debris*, so that at least twenty acres of said land is thereby totally destroyed for agricultural purposes; that said land was very valuable for meadow; that the grass and hay growing upon said land for 1903 was totally destroyed; that the same was and is covered with mud and sediment, that makes the cutting thereof extremely difficult and expensive; that the defendant also excavated soil along the said north line of the plaintiff's land and on the plaintiff's land, and turned the waters of said river thereon so that the soil is washed away to a great depth and the bank of said stream is destroyed, so that to restore the same would be expensive and difficult, all to the plaintiff's damage in the sum of $8,000. The defendant answered by way of admissions, denials, and counter allegations, and, among other things, to the effect that, if the plaintiff's lands were injured or damaged, the same was the result of natural causes and not by reason of the defendant's negligence; that the banks of the stream are extremely low where the lands described are situated and for several miles above and below said lands, and overflow several times a year, especially during the summer months, and that condition has existed from time immemorial; that the lands in question are low or bottom lands and have overflowed several times every year from time immemorial, and the same has caused more or less clay, sand, and *debris* to be carried and deposited thereon in the lower places, and the same elevates the lands and increases their value; that such lands were absolutely worthless until within a few years; that less than two acres have

been so covered; that the defendant is the owner of that part of fractional lot 6 described as follows:

"A tract containing 4.52 acres, more or less, part and por-tion of fractional lot 6 in section 28 in township 16 north, of range 7 west, bounded on the east and north by the La Crosse river, on the west by the La Crosse river and the right of way of the Chicago, Burlington & Northern R. R. as now located, and on the south by a line commencing at an elm tree two feet in diameter which stands in the southerly bank of said La Crosse river—the exact location of which tree is designated and fixed by starting at the center of said section 28 and run-ning north along the center line of said section 950 feet and thence running 114° northwestwardly 450 feet and from the said elm tree 130° 30' southwestwardly 608.65 feet to a point in the eastern line of the aforesaid right of way of the C. B. & N. R. R. about twenty-four feet south from the south bank of said La Crosse river."

The answer further states that the defendant also owns the land north of the river and adjoining the lands described in the complaint, all of which are low and subject to be over-flowed; that the defendant dug a ditch upon his own land across the area in a straight line from a point where the stream so starts north and the point where it so returns, for the pur-pose of hastening the passage of water from his lands into the Mississippi river; that such work was done in a careful man-ner and in no way contributed to the damage complained of, and in no way injured the plaintiff's land, all of which was so done with the express understanding between the plaintiff and the defendant that it should be so done, and the plaintiff consented thereto; that if any water, sand, *debris,* or other materials were deposited upon the plaintiff's lands, or injury done thereto, the same was the result of the lowness of said lands and the bank of the river, or the negligent and insuffi-cient bridge built and maintained over the river and lands by the Chicago, Burlington & Northern Railway Company, and not by anything done by the defendant. At the close of the trial the jury returned a verdict in favor of the plaintiff and

assessed her damages at $3,000. The plaintiff's costs were at first taxed at $490.34, which by order of the court were reduced to $382.34, and thereupon judgment was finally perfected and entered for $3,382.34 damages and costs. From the judgment so entered the defendant appeals.

For the appellant there was a brief by *Morris & Hartwell* and *Winter & Esch,* and oral argument by *Frank Winter.*

*C. L. Hood* and *W. F. Wolfe,* for the respondent.

CASSODAY, C. J. 1. The four acres and a half of land (and a little over) belonging to the defendant, and specifically described in his answer, were conveyed to him by warranty deed by George H. Ray and wife December 8, 1898. The 214 acres of land (and a little over) belonging to the plaintiff, and specifically described in her complaint, were conveyed to Kaiser & Meininger by warranty deed by George H. Ray and wife February 11, 1899, subject, however, to the right of way, as then located, of the Green Bay & Minnesota and of the Chicago, Burlington & Northern railways across certain portions thereof, and excepting therefrom the four and a half acres of land so conveyed to the defendant December 8, 1898, and to which deed and record reference was therein made for the description thereof. On the same day—February 11, 1899—Kaiser and Meininger, and their respective wives, in consideration of the moneys therein agreed to be paid, contracted in writing that, upon such payments being made, they would convey the same land to the plaintiff in this action; and thereupon the plaintiff entered into possession of such lands under such contract. It is undisputed that the four and a half acres of the defendant's land thus described are immediately north of and adjoining the plaintiff's land thus described. The principal controversy is as to the exact location of the southerly line of the four and a half acres, as mentioned in the deed thereof to the defendant from Ray and wife, December 8, 1898, and the plat thereto attached. That line is

therein stated to be 608.65 feet in length, and running, as therein mentioned, from the elm tree to a point in the eastern line of the right of way of the Chicago, Burlington & Northern Railway about twenty-four feet south from the south bank of said La Crosse river, and marked "A" upon the plat therein mentioned. The defendant contends that the court improperly submitted to the jury the question whether any part of the ditch was constructed on the plaintiff's land. In submitting the question the court charged the jury, in effect, that the plat attached to the deed from Ray to the defendant was therein referred to and made a part of the deed; that, when lands are conveyed according to a plat, such plat, with its notes, lines, descriptions, and landmarks, becomes as much a part of the deed and as controlling as if such descriptive features were written out on the face of the deed, but that such reference in the deed to the plat did not preclude evidence on the part of a surveyor or on the part of any one else to show where such lines or boundaries actually lie or fall upon the land so attempted to be described, so that, to determine whether this ditch was built on any part of the plaintiff's land, the jury should consider all the evidence—not only the deed and plat taken together, but the evidence of the surveyors and the evidence of the defendant and the evidence of Mr. Neumeister and his witnesses as to whether this ditch was wholly upon the defendant's land, or partly upon the defendant's land and partly upon the plaintiff's land,—and that if they believed, under all the evidence, that part of this ditch was upon the plaintiff's land, or that the dirt was thrown therefrom upon some of her land, then the defendant was liable for the actual injury by cutting that particular land of the plaintiff and building the ditch upon a portion of it, provided they should believe that this ditch was dug or placed there without the consent, license, or permission of the plaintiff; that, in so charging, the court only had reference to damage or injury to the plaintiff at this particular point, and then only upon condition that they

should first find that a portion of the ditch was upon the plaintiff's land without her consent, license, or permission. We find no error prejudicial to the defendant in such portions of the charge. The question recurs whether the evidence on the part of the plaintiff was sufficient to support a finding that the ditch or some part of it was on the plaintiff's land. One of the surveyors, among other things, testified to the effect that, since Ray's deed to the defendant, the river had changed its location; that when that survey was made the river was extremely low; that there were plenty of places where the river had since changed; that the railroad bridge had been changed very materially; that the new bridge had been built; that all the bents of the bridge across the water had been changed; that he reproduced the survey exactly as represented in the deed and on the plat attached; that he commenced at the center of the section, as therein mentioned, and ran the lines as therein mentioned; that the line between the plaintiff and defendant was entirely within the ditch (that is to say, the line was wholly in the water in the ditch, and north of the south bank of the ditch); that the ditch was thirty feet wide and over, and that the whole length of the ditch, east and west, was partly on the defendant's land and partly on the plaintiff's land; that the south side of the stream in the ditch was down on the plaintiff's land, at the nearest point about four feet south of the line, and at the widest point eighteen or twenty feet south of the line, and on an average about twelve or fourteen feet south of the line. The other surveyor corroborated such testimony to some extent, and, among other things, testified that the north line of the plaintiff's land extended into the stream or ditch as it then existed from one to twelve feet, and was excavated along that north line from two to four feet in depth. We must hold that the evidence on the part of the plaintiff was sufficient to take the case to the jury on the question above suggested. It is true that during the examination of the defendant the court suggested that the two surveyors, Pow-

ell and Bradish, be recalled and examined as to whether the land surveyed by Bradish corresponded with the lines on the plat, and stated, presumably in the presence of the jury, that, if Bradish and Powell should both agree that the line that had recently been run by Bradish corresponded with the southerly boundary line of the defendant's land, then there would be no contested fact to go to the jury. This statement was erroneous and inconsistent with a portion of the charge mentioned. Such charge, however, eliminated the error by expressly directing the jury to consider all the evidence as above mentioned.

2. It is undisputed that the ditch was constructed by the defendant in the fall of 1902. After stating the claims of the respective parties as to consent, license, and permission, the court charged the jury to the effect that if they found that the ditch was so constructed with the consent, license, permission, or acquiescence of the plaintiff, acting through her husband as her agent, and who, it was admitted, acted, whenever he did act, as her agent, along about that time, then that the plaintiff was not entitled to recover any damages whatever in this action. By returning a verdict in favor of the plaintiff the jury necessarily found that the plaintiff never gave such consent, license, permission, or acquiescence. But counsel contend that the court improperly excluded testimony tending to prove that the plaintiff's husband gave such parol license prior to the time when Ray conveyed to the defendant, and months prior to the time when Ray parted with the title to the lands now owned by the plaintiff. This contention is based upon some supposed equity existing in favor of the plaintiff's husband prior to the time when Ray so parted with the title. By the foreclosure sale of May 7, 1898, Ray must be regarded as having become the absolute owner, in law, of all the lands in question. The defendant recognized such ownership by taking the deed from him December 8, 1898. That was more than two months prior to the time when the plaintiff acquired title

to the lands in question. Prior to the time she so acquired such title it was impossible for her husband to act as her agent in the giving of such consent or permission. This is a straight action at law, brought by the wife to recover damages for constructing a ditch on her land, and is not to be defeated merely by a parol license given by her husband four years previously, and more than two months before she acquired such title. *Bruley v. Garvin,* 105 Wis. 625, 81 N. W. 1038.

3. Among other things the court charged the jury to the effect that, if they found from the evidence that the ditch or dike was wholly upon the defendant's land, then they should determine whether the defendant had kept and maintained the same from time to time prior to the commencement of this action, so as to prevent the waters of the river from coming upon the plaintiff's land; that under the law the defendant was bound to see, from time to time, either that the ditch or the dike, or the dike and ditch combined, were sufficient to carry away the water, so as not to come upon the plaintiff's land under all ordinary circumstances and conditions; and in that connection the court refused to instruct the jury:

"If the defendant dug the channel on his own lands, there can be no recovery except the defendant has been guilty of some negligent act to which the plaintiff has not actually or impliedly consented." And again:

"If the ditch was on defendant's land, and he used reasonable and ordinary care to guard against injury to plaintiff, he is not liable. If the embankment washed out from natural causes the defendant could not reasonably have foreseen and guarded against, he is not liable if the dike was on his own land."

We are constrained to hold that these instructions should have been given. They were applicable to a point material to the issue and the evidence and not covered by the general charge, and hence should have been given. *Campbell v. Campbell,* 54 Wis. 90, 98, 11 N. W. 456; *Curtis v. C. & N. W. R. Co.* 95 Wis. 460, 470, 70 N. W. 665. Besides, the por-

tions of the charge upon that question above referred to appear to have been misleading. The well-recognized rule of law is:

"A proprietor may change the whole course of a stream within the limits of his own land, provided he restores the water undiminished to the original channel before leaving his premises, and, if he has exercised reasonable care and foresight, he cannot be held liable for injuries resulting from un-foreseen causes." 28 Am. & Eng. Ency. of Law (1st ed.) ·982.

This statement of the rule is supported by the authorities. Gould, Waters (3d ed.) §§ 297, 298; *Pitts v. Lancaster Mills,* 13 Met. 156; *Shrewsbury v. Smith,* 12 Cush. 177; *Wadsworth v. Tillotson,* 15 Conn. 366; *Everett v. Hydraulic F. T. Co.* 23 Cal. 225; *Railroad Co. v. Carr,* 38 Ohio St. 448; *Central T. Co. v. Wabash, St. L. & P. R. Co.* 57 Fed. 441, 446. In this last case it was held that, where "the injuries complained of were such as could not be anticipated or guarded against by the exercise of ordinary and reasonable foresight, care and skill, the defendant was not liable." See *McArthur v. Green Bay & Miss. C. Co.* 34 Wis. 139, 145. In this connection it is sufficient to observe here that there is evidence tending to prove that in March, 1903, there was an overflow caused by a large tree lying in the ditch about halfway between the main river and the bridge, and that it was filled up with brush, and tore out some of the dirt and threw it up along the side, and the water went through a part of the plaintiff's land. Besides, the return of a general verdict makes it impossible to tell whether the jury found the ditch to be partly on the plaintiff's land or wholly on the defendant's land, or whether some of them found one way and some the other.

4. Error is assigned because the testimony was not strictly limited to such damages as accrued prior to July 31, 1903, when the action was commenced. The court expressly charged the jury that they must not consider any damages subsequent to that date. And again the court said to the jury, "All the

damages in this case must be estimated as having accrued prior to the day or up to the day of the commencement of this action," which was July 31, 1903. These instructions seem to have sufficiently guarded the rights of the defendant in that respect.

5. It is claimed that the damages found by the jury were excessive. But there are so many elements entering into the question of damages, depending upon different phases of the evidence, some of which are quite uncertain, that we do not feel warranted in laying down any arbitrary rule, especially as there must be a new trial and the evidence may be materially different.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.