DEWEY, Appellant, vs. FLEISCHER, imp., Respondent.
DEWEY, Respondent, vs. FLEISCHER, imp., Appellant.

*October 13—November 7, 1906.*

*Life insurance:·Holding policy in trust: Evidence.*

To establish an oral agreement to hold in trust, in whole or in part, for the benefit of the wife of the assured a life insurance policy payable to the alleged trustee, the proof must be clear and convincing, and the loose and vague recollections of witnesses as to a conversation with such alleged trustee are not sufficient.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed in part; reversed in part.*

This action was originally brought by plaintiff against the Prudential Insurance Company to recover upon a policy of life insurance issued upon the life of plaintiff's brother, Adolph Fleischer, of which the plaintiff was the sole beneficiary. The insurance company answered, admitting liability on the policy, offering to bring the money into court, and alleging that one *Jennie S. Fleischer,* widow of the deceased, claimed the same. *Jennie S. Fleischer* made petition to be made a party defendant, claiming that the policy was made

payable to the plaintiff simply to secure the payment of a loan of $100, made by plaintiff to Adolph, and that plaintiff agreed to hold the policy in trust for the benefit of the petitioner after payment of such loan; and further claiming that plaintiff was financially irresponsible, so that, if she obtained possession of the money, petitioner would be remediless. The court ordered *Jennie S. Fleischer* to be made a party defendant, and that her petition stand as her answer to the complaint, and also made an order discharging the insurance company from liability upon the payment of the amount of the policy into court. The plaintiff replied to *Jennie S. Fleischer's* answer, denying that the policy was held in trust, and alleging her own ownership thereof. The action was tried by the court, and findings were made to the effect that the policy was issued pursuant to an agreement between the plaintiff and Adolph that the plaintiff should hold the same as collateral security for the repayment of certain loans previously made by the plaintiff, her mother, Sophia Fleischer, and her husband, George Dewey, to Adolph, amounting with interest and premiums paid to $1,190.94, and the balance in trust for the benefit of *Jennie S. Fleischer.* Upon these findings judgment was entered, without costs to either party, that the plaintiff be paid $1,190.94 out of the sum deposited in court and the defendant be paid the balance, from which judgment both parties appeal.

For the plaintiff there was a brief by *Kronshage, McGovern, Corrigan & Fritz,* and oral argument by *Theodore Kronshage, Jr.*

For the defendant there was a brief by *Scheiber & Orth,* and oral argument by *C. A. Orth.*

Winslow, J. Both parties complain of certain rulings upon the admission of evidence, but we find it unnecessary to consider them. They have no material bearing upon the decisive question in the case, which is the question whether the

evidence is sufficient to prove that the plaintiff agreed to hold the policy, or any part of it, in trust for the defendant. The plaintiff had an insurable interest in her brother's life. The policy was deliberately made payable to her, and she is entitled to recover the full amount thereof unless she made an agreement to hold it in trust for another. There was no written agreement of trust, but the attempt was made to prove a parol agreement. Was the proof sufficient for the purpose, in view of the rule that such proof must be clear and convincing and cannot consist of loose or vague expressions? 1 Perry, Trusts, § 86; *Allen v. Withrow,* 110 U. S. 119, 3 Sup. Ct. 517. We think not. A brief review of the evidence on the subject will be given.

The plaintiff lived in Milwaukee with her husband, George Dewey, who was in business in that city. Sophia Fleischer, the mother of plaintiff and of Adolph Fleischer, lived with them. Adolph Fleischer lived with his wife, *Jennie,* in Chicago, doing a small business which proved unsuccessful. During the years 1892 and 1893 Sophia and *Sadie* [the plaintiff] made loans to Adolph to help him in his business, aggregating $500, and George made him another loan of $100 in 1899. These loans were unpaid in the fall of 1902, when the plaintiff went to Chicago and made her brother a visit. There was some talk at this time about Adolph taking out a policy of insurance on his life in favor of the plaintiff. The plaintiff says that Adolph offered to take out a policy of $2,000 in plaintiff's favor if she would keep up the premiums, stating that she and George had helped him financially many times, and taken care of his mother twenty years, and that was the only way he could pay them, and that she said she would go home and ask George about it, and see if he would pay the premiums. The defendant says that the talk was about Adolph taking out some insurance to secure plaintiff for her loan of $100, and that whatever was left after that payment was to go to her, and plaintiff said she would go

home and talk it over, and if she could see any way to carry it she would do so, and that plaintiff did not come to Chicago again to speak about the policy. The defendant also says that plaintiff said she was willing to carry it so she would be protected, and she would hold it in trust for defendant.

Subsequently, and about December 1st, Adolph made his application for a policy payable to plaintiff, and passed the examination, and the policy was written but not yet delivered. These facts were evidently communicated by defendant to the plaintiff by letter, although no definite proof of the contents of the letter appears; and on January 5, 1903, the plaintiff sent a letter to the defendant, of which the material part is as follows:

"DEAR SISTER: I rec. your letter this a. m. and hasten to answer same. I talked it over with George and have finally persuaded him to take the policy. He thinks the company is all right as far as that goes only it takes the money every year but I told him to try it and we could drop it at any time—*George says that it can be made out to me because Adolph is my brother but that the policy is his*—as I have not enough money to swing it—So it is all right being his money that is invested."

A few days later plaintiff wrote defendant the following letter (undated), inclosing a check of $73:

"DEAR SISTER: I am at the store writing this and do not know just what the exact amount was so sent check of $73 and you can let me know what you have decided on.      SADIE.

"I will send this special so as to get there in time."

On January 9th the defendant mailed the policy to the plaintiff with a letter, the material part of which is as follows:

"DEAR SADIE: We received the check last night at 7 p. m. I send you the policy for $2,000 and the receipt for the same the balance $2.48 to apply on the $3,000 one the agent does not think he will have to be examined again and I hope he won't three times before he could pass."

The defendant testifies to the sending of another letter by her to the plaintiff about a month or more after she learned that the policy was payable to *Mrs. Dewey,* "it must have been in 1903 after the policy had been issued," but, as this was after the contract had been fully completed, it can have no effect and will not be considered. It further appears that when the second premium fell due it was paid by the plaintiff.

Taking this testimony under its most favorable aspect for the defendant's contention, we are unable to see how it can be held to establish the making of any agreement to hold the policy in trust. Admitting it to be proven that there was talk about such a trust, and that plaintiff said she was willing to so hold it, it is indisputable by the defendant's own admission that no agreement was then made. She admits that the result of the conversation was that *Mrs. Dewey* made no definite promise to do anything, but said she would go home and talk it over, and if she could see a way to carry it would take it up. So, it must be considered established that the whole talk, whatever it was, was merely tentative. But, even if this were otherwise, the final arrangement was made in writing by the letters already quoted taken in connection with the policy, and this superseded any oral understanding or preliminary conversation. In this written contract there is no element of doubt. The plaintiff wrote that her husband would carry the policy, that it should be made out to the plaintiff, but was to be, in fact, his. A few days later the premium money was sent; and, in response to this, the written policy, payable to the plaintiff, was returned by the defendant. This closed a contract in writing absolutely certain in its terms, and there is no room for varying it by previous oral conversations.

The only other testimony upon the subject was the evidence of two witnesses as to some oral statements made to them by the plaintiff in the course of a conversation occur-

ring about a week before Mr. Fleischer's death. One of these witnesses testified that the plaintiff said "she was carrying a policy to protect herself for money Mr. Fleischer owed her and to benefit *Mrs. Fleischer.*" The other witness testified that the plaintiff said she held a policy on her brother's life; that she had loaned him $100; that she had tried to help her brothers and sisters, but that she was safely secured for what her brother had borrowed of her, and she expected to see *Jennie* through; that she had only loaned her brother $100, and that the balance would go to *Jennie.* At the best these are but the loose and vague recollections of witnesses as to an oral conversation in which they had no interest, occurring two years previously. On their face they may well refer only to a benevolent intention, and they certainly cannot be held to satisfy the requirements of the law as to the kind of evidence necessary to establish a parol trust.

Judgment should have been rendered for the plaintiff for the whole sum. Both parties have appealed from the whole judgment. On the plaintiff's appeal that part of the judgment awarding her $1,190.94 out of the moneys deposited in court must be affirmed; and the remainder of the judgment reversed, with costs, and with directions to enter judgment awarding the payment of the remainder of the money in court to the plaintiff, with costs. The defendant can take nothing on her appeal.

*By the Court.*—It is so ordered.