NEUMEISTER, Respondent, vs. GODDARD, Appellant.

*October 17—November 5, 1907.*

(1) *Appeal and error: Exclusion of evidence.* (1, 9, 10) *Immaterial error.* (1, 2, 6, 7, 10) *Waters and watercourses: Alteration of channel: Negligence in construction and maintenance.* (3–5, 11, 14) *Assignments of error: Briefs.* (6) *Evidence sustaining finding.* (8, 9, 12) *Instructions to jury.* (8, 9) *Instructions appropriate to questions of special verdict.* (11) *Special verdict: Questions submitted: Questions requested.* (12) *Same: Amendment of questions after argument: After the jury had retired.* (13, 14) *Exceptions: Form and effect.* (15–17) *Misconduct of counsel: Improper argument: New trial.*

1. In an action for damages to land caused by the negligent construction and maintenance of a cut-off in a river channel, the exclusion of evidence tending to show that plaintiff's husband,

instead of plaintiff, was the owner of the land upon which the cut-off was made, and of a parol license from plaintiff's husband to dig the cut-off, becomes immaterial where the jury have found that the cut-off was made by the defendant solely upon his own land, but was negligently constructed and maintained.

2. An owner of land is answerable for the negligent construction and maintenance of a cut-off, where such negligent construction and maintenance occurred in the changing of the channel of a river on his land so as to cast the waters thereof with the excavated material upon contiguous land in greater volume and with more injurious consequences than formerly.

3. Supreme Court Rule 10 requires questions submitted to that court to be presented by separate, clean-cut assignments of error relied upon, each followed by the leading facts or conclusions applicable thereto, the principles of law applicable, and the authorities in support thereof.

4. A subdivision of a brief not directed to any specific assignment of error, and which, after a rambling and discursive review of nearly the whole case, closed with the statement: "We submit that the evidence of negligence does not sustain the findings and that the findings do not sustain the judgment, and, that being the case, the court should not have granted the defendant's motion for a judgment," does not comply with Supreme Court Rule 10, especially where there was no such error assigned as refusal to grant the defendant's motion for judgment, although the record showed there was such a motion denied.

5. Where the record showed that appellant had moved to set aside the answers to specific questions of a special verdict, an assignment charging error in refusing to strike out the answers to "several" questions is insufficient.

6. In an action for damages to land caused by the negligent construction and maintenance of a cut-off in a river channel, the evidence, stated in the opinion, is *held* to sustain findings in favor of the plaintiff.

7. In such case, while it was a close question of fact whether the damage to plaintiff's land was caused by the negligent construction and maintenance of the cut-off or by freshets, it was *held* that the trial court properly denied the defendant's motion to set aside answers to questions of the special verdict, in view of the evidence, stated in the opinion.

8. Where instructions to the jury, although applicable to other questions of a special verdict, were not applicable to the particular questions in connection with the reading of which they

were given, but were not incorrect as legal propositions nor inapplicable to other phases of the case, it was *held* that the jury were not misled thereby to appellant's prejudice.

9. Where the record showed that a question of a special verdict to which a given instruction was applicable was re-read to the jury after reading a question to which the instruction was inapplicable and just before the giving of the instruction, appellant was *held* not to be prejudiced thereby.

10. In an action for damages to land by the negligent construction and maintenance of a cut-off in a river channel, one question of the special verdict inquired whether the cut-off was constructed or maintained with ordinary care and prudence, and another question whether the damages were occasioned by reason of such construction and maintenance. *Held*, that an instruction to the jury given in connection with the latter question, stated in the opinion, was not misleading to appellant's prejudice by the use of the words "by means of the cut-off," and "attributable solely to the construction and action of the cut-off," instead of the words "caused by the negligent construction or maintenance of the cut-off."

11. An assignment of error that the court "erred in submitting questions in special verdict and in refusing to submit questions asked" by appellant cannot be considered, where of twenty-one questions submitted some were conceded to be correct, and of fifteen questions requested some were identical with questions submitted, some clearly improper, and some covered or included in, although not identical with, questions submitted.

12. In an action for damages to land caused by the negligent construction and maintenance of a cut-off in a river channel resulting in flooding plaintiff's land, the court instructed the jury, in substance, that any other damages by the deposit of sediment of any kind from extensive floods not coming from the cut-off or attributable to it, or from any and all natural causes, were not to be considered upon the question of damages, and that if the damages were aggravated and increased by back waters from other streams or from other flood waters independent and apart from the cut-off, or from unusual rains, or anything in the nature of natural causes, then those were not to be taken into consideration, but that they were to determine how much, if any, the overflow waters from the cut-off contributed or caused existing conditions. *Held*, under the circumstances, stated in the opinion, that it was not error to strike out the word "alone" from questions of the special verdict interrogating the jury as to whether the lands were permanently dam-

aged by the overflow of waters from the cut-off alone, and whether the lands were damaged by reason of the overflow waters caused by such cut-off alone.

13. Exceptions raise questions of law, not of fact, and the facts on which the exception is based should appear as a statement or recital of fact in the bill of exceptions in some form other than by embodying that recital in an exception.

14. An assignment of error on the ground that the court communicated with the jury and gave them instructions in the absence of appellant's counsel, where neither the record nor brief of counsel clearly shows this to have been done, is insufficient, the only foundation for such assignment being in an exception to the instructions "because given in the absence of defendant's counsel."

15. Statements of plaintiff's counsel in argument to the jury that defendant could spend $1,000 to plaintiff's $100; that half the money spent on the litigation would heal the wound defendant had made in the financial standing and position of plaintiff; that defendant would not pay plaintiff, but would rather spend it on lawyers; that the time might come when the jury would be up against the power of money, and that the only hope of a man situated like plaintiff was in a jury of twelve men selected from the ordinary walks of life, is *held* not to be argument, but rather insinuation pregnant with unfair suggestion, and that the use of such language to the jury could not be too severely censured.

16. In such case the trial court would have been justified in granting a new trial if it believed the language had its intended effect upon the jury.

17. In such case, although disapproval of counsel's remarks, by instruction of the trial court to the jury to disregard the language, might have been more vigorous and clear, yet, that court having disapproved the language and refused to grant a new trial, the appellate court declines to reverse the judgment on that ground.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed.*

The appeal is from a judgment for $2,866.68 damages and costs rendered in an action for wrongful and negligent diversion of the La Crosse river from its natural course and causing the deposit of sand, sediment, and mud on plaintiff's land to the plaintiff's damage. The defendant answered in nega-

tion, and, besides, averred license to make the excavation and that the injury to the plaintiff's land by overflow was caused by the bridge of the Chicago, Burlington & Quincy Railroad. A special verdict found (1) that the plaintiff was the sole owner of the hay marsh damaged; (2) that the ditch or cut-off in question, constructed prior to July 31, 1903, was not partly on plaintiff's land, (3) but was wholly on defendant's land; (4) was not constructed with the consent, license, or permission of the plaintiff, (5) nor constructed or maintained with ordinary care and prudence; (6) a tree lodged in the cut-off near the middle thereof in the spring of 1903; (7) this a reasonably careful and prudent person under similar circumstances might have anticipated; (8) the first overflow on plaintiff's land from the cut-off was not caused by the lodging of a tree therein, (9) but the waters from the cut-off overflowed and ran through the dyke and upon plaintiff's premises before the tree got into the cut-off; (10) a person in the exercise of reasonable and ordinary care would have reasonably anticipated that, if a tree lodged in said cut-off, it would break the dyke and cause the waters from the cut-off to overflow and do damage to the growing grass and to the lands of the plaintiff; (11) and such person would reasonably have anticipated such damage as the natural and probable result of a tree becoming lodged in such cut-off; (11A) and the damages referred to in (10) were the natural and probable result of such tree becoming lodged in such cut-off; and (11B) such damage ought to have been foreseen by a person of ordinary care in the light of attending circumstances; and (12) no damage would have occurred to the plaintiff's premises and the growing grass thereon by the lodging of such tree, except for the construction of such cut-off; and (13) the waters from the cut-off overflowed and broke through the dyke after the tree was removed and did damage to the plaintiff's growing grass and premises; and (14) such injury was the probable and natural consequence

of the negligence of the defendant in the construction and maintenance of such cut-off; and (15) such damage ought to have been foreseen in the light of attending circumstances; and (16) by reason of such construction and maintenance the waters from the cut-off overflowed the lands and premises of the plaintiff prior to July 31, 1903, so as to damage and prevent the cutting of the growing grass thereon for hay during the summer or haying season of 1903; and (17) the reasonable value of the growing grass damaged by the water from the cut-off at the time it was so damaged was $950; and (18) the lands south of the cut-off in question and east of the Burlington track were permanently damaged by the overflow of waters from the cut-off in question; and (19) the value of such permanent damage done by such cut-off to the lands lying east of said railway track and south of the cut-off was $800; and (20) the lands of the plaintiff immediately west of the Burlington track were damaged by reason of the overflow waters caused by such cut-off prior to July 31, 1903, from the deposit of sand and sediment thereon, which caused weeds and willows and other *débris* to grow and be on the same; and (21) the reasonable expense to clean off and remove such weeds and willows and other *débris* which have resulted solely on account of the overflow of waters caused by the cut-off prior to July 31, 1903, would be $250.

This verdict, although inaccurate in expression and somewhat confused, nevertheless eliminated the claim of the plaintiff that the excavation was made on her land and the claims of the defendant that it was made in pursuance of a license from the plaintiff and that the overflow was caused by the railroad bridge, and found the defendant liable for negligent construction and maintenance of a ditch or cut-off by which the course of the La Crosse river was, as to part of the volume of that river, changed. The evidence, taken with the findings, shows that both farms are in the valley of the La Crosse river, and at the place in question the La Crosse

river is about sixty feet in width and six feet deep at ordinary stage of water, meanders through the nearly level alluvium forming the surface of this valley, and at one point on the plaintiff's land it curves away northward and returns again, forming an irregular bow, and across this bow like a bowstring in a straight line the defendant on his own land constructed a ditch or excavation about thirty feet wide and two or more deep, for the purpose of having the water of the river wash through and deepen this excavation and proceed in a straight line instead of swinging around the bow to the northward. This excavation is what is referred to as the cut-off in the verdict. In making this excavation the clay, sand, or alluvial earth excavated was thrown up along the south side of the cut-off—that is, between the cut-off and plaintiff's land—and the bank thereby caused and some repairs of that bank by driving stakes and putting plank is what is known and referred to as the dyke in the special verdict. The old channel of the river forming the bow spoken of around to the north was not closed in any way. The south bank of this old channel and the land between that and the cut-off is represented in elevation by 95.6, 94.6, 95, 94.3, 94.2, and from the same datum line the elevation of the plaintiff's land is 94, 95.6, 94.7, 94.9, 95, 94.8, 94.6, 94.4, 94.5, 94.9, 93, and south of the right of way of the Chicago, Burlington & Quincy Railroad track 92.4, 92.6, and 92.3. The extreme variation between the highest and lowest level was fifteen inches, but in many places the difference of level was but a few inches. The lowest level of the bank of the old channel north of the cut-off is given at 94.2, the level of the defendant's flat land north of the cut-off is given at 95, and the lowest level given of plaintiff's land south of the cut-off is 94. Profiles of the surface across the valley under the east side of the railroad bridge and under the west side of the railroad bridge show the surface of the valley nearly level, except for the depression of the bed of the stream. The land

is all marshy land and the plaintiff had her land ditched, and prior to the construction of the cut-off there was no water during the summer season on the premises, and the land had been plowed and produced tame hay. After the construction of the cut-off the land overflowed, the ditches were filled or partially filled with sediment and sand and part of the surface so covered, and the land became wet and marshy. The testimony as to whether the seasons of 1903 and 1904 were unusually dry or unusually wet is conflicting.

For the appellant there was a brief by *Morris & Hartwell* and *Winter & Esch,* and oral argument by *Frank Winter.*

*C. L. Hood,* for the respondent.

TIMLIN, J. The appellant assigns error because of the exclusion of evidence tending to show that plaintiff's husband, instead of plaintiff, was the owner of the land upon which the cut-off was made prior to and at the time of its purchase by the defendant from a trustee of the title, and that the defendant had from plaintiff's husband a parol license to dig the cut-off, but these rulings become immaterial because the jury found that the cut-off was made by the defendant solely on his own land, but was negligently constructed and maintained. No mere parol license from a former owner to construct a cut-off could enlarge the right which he had as owner in fee simple of the land. Either as owner having the right to construct, or as licensee having a right to construct, he would be answerable for negligent construction or maintenance, if such negligent construction and maintenance occurred in changing the channel of the river on his land so as to cast the waters thereof with the excavated material upon the contiguous lands of the plaintiff in greater volume and with more injurious consequences than formerly. *Neumeister v. Goddard,* 125 Wis. 82, 103 N. W. 241.

The next subdivision (B) of appellant's brief does not seem to be directed to any specific assignment of error and is

very rambling and discursive. It reviews nearly the whole case and winds up with the statement: "We submit that the evidence of negligence does not sustain the findings and that the findings do not sustain the judgment, and, that being the case, the court should have granted the defendant's motion for a judgment." There is no such error assigned as refusal to grant the defendant's motion for judgment, although there was such a motion denied. This is a very improper method of presenting questions to this court, which are required to be presented by separate, clean-cut assignments of the errors relied upon, each followed by the leading facts or conclusions applicable thereto, the principles of law applicable, and the authorities in support thereof. Supreme Court Rule 10, adopted June 21, 1906. The only assignment of error to which this part of the brief can be made applicable is the seventh assignment, charging error in refusing to strike out the answers to "several" of the questions, on the ground that such answers are not supported by the evidence. The record shows that the defendant moved to set aside the answers to (7), (8), (9), (10), (11), (11A), (11B), (12), (13), (14), (15), (16), (17), (18), (19), (20), and (21), referred to in the statement of facts preceding this opinion, and he now assigns as error that the court below was wrong in "several" of these rulings. The insufficiency of this assignment of error must be apparent. We have nevertheless looked into the evidence sufficiently to discover that there is evidence to support these findings of the jury and tending to show that the construction of the cut-off in the alluvial flat so as to make a new channel, leaving it with the last excavated material thrown up along its banks for the river when at flood to cut out or wash out and crossing a slight depression in the alluvial bottom and of a width of only thirty feet with a depth of two feet, while the old channel was about sixty feet wide and six feet deep, might have been properly considered by the jury to have been negligent construction, and that

maintaining the cut-off in this condition and of such narrowness and shallowness as to allow drifting logs or trees to come in but not float through might have been considered negligent maintenance.

It is a close question of fact whether the damages to plaintiff's land were caused by the negligent construction and maintenance of this cut-off or by freshets occurring in the La Crosse river. But there is some evidence that the damaged condition in which the land was found after the construction of this cut-off and the overflow therefrom never resulted from former freshets of even greater height. We conclude that the court properly denied the defendant's motion to set aside the answers for want of evidence. It is assigned as error and argued that the court in its charge with reference to (7) told the jury that the defendant was bound to exercise ordinary care in the construction and maintenance of the cut-off; that this instruction was applicable to (5) and not to (7), and that with reference to (8) the court told the jury that there was evidence tending to show that the defendant went upon the land, removed the tree, and repaired the embankments as soon as the condition of the land would allow, and, if the jury believed this, they were to consider and determine under all the evidence whether the defendant was guilty of want of ordinary care in respect to the removal of the tree at the time of repairing the embankment. These instructions, although applicable to other questions of the special verdict, seem to be something of misfits as regards the particular questions in connection with the reading of which they were given, but, as they are not incorrect as legal propositions nor inapplicable to other phases of the case, we cannot think the jury were misled thereby to the prejudice of the appellant. It is argued that the instructions relative to (14), called in the record (15), were incorrect and misleading and applicable only to (5); but the latter was re-read to the jury immediately after (14), and, as the record shows,

just before the giving of the instructions, which seem to have been favorable to the defendant and applicable to (5). We hold there was no prejudicial error in this.

With reference to (16) the court charged:

"You will notice that you are called upon to say here whether or not the waters alone from the cut-off did this. There is testimony in the case tending to show that at some time during 1903 the waters of the La Crosse river overflowed generally. There is testimony to show that at some time (I think in 1903) the Mississippi river backed up or may have backed up on some portion of the plaintiff's farm. You have a right to consider upon answering this question as to the effect that any high water or the La Crosse river overflowing its banks, or the back water of the Mississippi river on to any portion of them, or any rains that may have fallen naturally upon them and done more or less damage. Of course any such damage that may have been done by natural causes and independent of any damage that occurred through and by means of the cut-off, and that were not attributable solely to the construction and action of the cut-off, you cannot take into consideration in answering this question."

This instruction and the question (16) are criticised on the ground that the expression used should have been, "caused by the negligent construction or maintenance of the cut-off," instead of "by means of the cut-off," and instead of "attributable solely to the construction and action of the cut-off." But the question itself refers to (5), and to "such construction and maintenance," meaning such as found in answer to (5), and the jury could not have been misled to defendant's prejudice by this part of the charge. We find no reversible error in any other portion of the charge.

In another defective assignment of error because it does not specify any questions, it is claimed that the court "erred in submitting questions in special verdict and in refusing to submit questions asked by defendant." On its face this assignment of error refers to all the twenty-one questions of

the special verdict, some of which are conceded to be correct, and the defendant requested the submission of fifteen questions, some of which are identical with some of the questions submitted, some are clearly improper, and others covered or included in, although not identical with, the questions submitted. The argument in support of this assignment of error does not help out its vague generality. This assignment of error cannot therefore be considered. Sup. Ct. Rule 10; *Roedler v. C., M. & St. P. R. Co.* 129 Wis. 270, 109 N. W. 88; *My Laundry Co. v. Schmeling,* 129 Wis. 597, 109 N. W. 540, and cases at page 615 (109 N. W. 547); *Olwell v. Skobis,* 126 Wis. 308, 105 N. W. 777.

The sixth assignment of error is "in changing essentially questions in special verdict after the argument and in some cases after the jury have considered the questions for a long time." This does not point out what questions, but, turning to chapter E of appellant's brief, covering this assignment of error, we find it stated:

"It appears by the record that after the argument and before the retiring of the jury Mr. Hood moved that the word 'alone' be stricken out of questions 18 and 20. This motion was overruled by the court at first, but finally granted. It was also stricken out of question 21."

After the jury had retired and when the jury again came into court, the word "alone" was stricken out of question (16) also, and also from (17). Now, the word "alone" never was in question (21) nor was it ever stricken out of (21). At the time the court charged the jury question (18) read: "Were the lands immediately south of the cut-off in question and lying east of the Burlington track permanently damaged by the overflow waters from the cut-off alone in question;" and question (20) read: "Were the lands immediately to the west of the Burlington track belonging to the plaintiff damaged by reason of the overflow waters caused by such cut-off alone prior to July 31, 1903," etc. Before the jury retired, on motion of plaintiff's counsel these two ques-

tions were changed by striking out the word "alone" from
each. After the jury had been considering the case for some
time they returned into court and announced that with ref-
erence to question (16) there seemed to be a doubt regard-
ing the meaning of the word "alone." That question then
read as it was submitted and at the time the jury were in-
structed: "If you answer question (5) 'No,' then did the
waters from said cut-off alone by reason of such construction
and maintenance overflow the lands and premises of the
plaintiff," etc. The court thereupon struck out the word
"alone." This brought attention to question (17), which
read at the time the charge was given and the verdict sub-
mitted to the jury: "If you answer question (16) 'Yes,' then
what was the reasonable market value of the growing grass
damaged by water from the cut-off alone at the time it was
so damaged?" The court then struck out the word "alone"
from the seventeenth question. The court had, however, in-
structed the jury:

"Any other damages by the deposit of sediment of any
kind from extensive floods not coming from the cut-off or
attributable to the cut-off or from the backing of the waters
of the Mississippi, or caused by natural rains, or from any
and all other natural causes, those are not to be considered
upon the question of damages."

And, after striking out the word "alone" from the six-
teenth and seventeenth questions, the court re-read to the
jury that portion of its charge last above quoted and also
the portion as follows, referring to question (20):

"Of course if they [damages] were aggravated and in-
creased by back waters from the Mississippi or from other
flood waters independent and apart from the cut-off, or from
unusual rains, or anything in the nature of natural causes,
then those are not to be taken into consideration. But you
are to determine, as best you can, how much, if any, did the
overflow waters from the cut-off contribute or cause these
conditions to exist."

We perceive no error in this correction made under such circumstances.    It did not disturb the legitimate course of counsel's argument, because, although it took the word "alone" out of the question of the special verdict, the charge of the court in explanation of the question submitted gave these questions practically the same meaning.    We think the requested instructions are substantially covered by the charge given.

Error is assigned on the ground that the court communicated with the jury and gave the jury instructions in the absence of defendant's counsel.    But neither the record nor the brief of appellant's counsel clearly shows this to have been done.    In presenting these assignments of error counsel says: "As appears R. 346, C. 320, at bottom of page, one of the questions was changed, possibly essentially."    No such thing appears at the page of case designated, but it does affirmatively appear elsewhere that defendant's counsel was present when the last change was made in the special verdict and excepted to the making of the same.    The only foundation of this assignment of error that we can discover is certain exceptions by the plaintiff to some of the instructions "because given in the absence of defendant's counsel."    This is not sufficient considering the manner in which exceptions are filed.    They raise questions of law, not of fact, and it should have appeared as a statement or recital of fact in the bill of exceptions in some form other than by embodying that recital in an exception, presumably drafted by the defendant's counsel.

The use of improper language by plaintiff's counsel to the jury is assigned as error.    Some of the language employed was very objectionable.    It is a question whether the more objectionable remarks are properly presented for our ruling in the bill of exceptions.    One is presented in this way:

"Defendant's counsel objects and excepts to Mr. Hood stating to the jury that 'Hi Goddard can spend a thousand dollars to their hundred.'    By the court: The jury will disregard the statement."

The next, however, purports to be quoted from Mr. Hood and is as follows:

"Mr. Hood: Half the money spent in this litigation would heal the wound he has made in the financial standing and position of these people in the world. He would not pay them, but rather spend it on lawyers. The time may come when you will come up against the power of money. (Objected to by defendant. Defendant asks to have taken down and for ruling of court. Exception to language.) By the court: The jury will disregard that. By Mr. Hood: I say the time will come when you will come up against a man like Hi Goddard, and you know what kind of treatment you will receive, and the only hope of a man situated like *Neumeister* is in a jury of twelve men selected from the ordinary walks of life."

The use of such language to a jury cannot be too severely censured. It is not argument. It is rather insinuation pregnant with unfair suggestion. The restraints of self-respect and the rules of forensic argument alike forbid it. The field for argument and illustration is broad and inviting. *Berry v. State,* 10 Ga. 511, 522. There is no justification or excuse for leaving it and selecting instead improper suggestions. But the use of such language was disapproved by the trial court instructing the jury to disregard it, although not as vigorously and clearly as we would have desired. The circuit court would have been justified in granting a new trial had he believed that such language had its intended effect upon the jury; but for us now to reverse this judgment for that reason would be to visit the consequences of counsel's indiscretion upon his unfortunate client, which by reason of the disapproval of the language by the trial court and its refusal to grant a new trial we are not inclined to do. *Andrews v. C., M. & St. P. R. Co.* 96 Wis. 348, 71 N. W. 372; *MacCarthy v. Whitcomb,* 110 Wis. 113, 124, 85 N. W. 707.

*By the Court.*—The judgment of the circuit court is affirmed.