Piper vs. The Chicago, Milwaukee & St. Paul R. Co.

PIPER, Respondent, vs. THE CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, Appellant.

*May 26 — June 21, 1890.*

*Railroads: Injury to person at street crossing: Unlawful rate of speed:*
*Contributory negligence: Court and jury.*

1. To run a train at an unlawful rate of speed within the limits of a city is negligence.

2. When a traveler on a public street in a city approaches a railway crossing he may properly assume, if nothing appears to the contrary, that a train is moving at a lawful rate of speed; and if it was moving at an unlawful rate, that fact may be considered in determining the question of contributory negligence.

3. In an action for injuries sustained at a railway crossing in a city, the testimony tended to show, among other things, that when between fifty and sixty feet from the crossing the plaintiff looked in the direction from which the defendant's train was coming, and did not see it, though he could have seen it had it then been within 900 feet of the crossing; that his attention was diverted by the conduct of his horses, so that he did not look again in that direction until he reached the track, when the train was so near that a collision could not be avoided; that the train was running thirty-six miles or more an hour, and that no warning was given as it approached the crossing: and that if the train had been 900 feet away when the plaintiff first looked, and had been running at the lawful rate of six miles an hour, he would have passed far beyond the crossing before the train reached it. *Held,* that it could not be said, as a matter of law, that the plaintiff was guilty of contributory negligence.

4. Although the statute did not require the whistle to be blown at that place, if those in charge of the train saw the plaintiff approaching the crossing and believed that he was unaware of the train's approach, it was their duty to sound the whistle as well as to take every other reasonable precaution to prevent the collision.

5. It was not error to charge that it was the peculiar province of the jury to decide whether the whistle was blown at the whistling post, or the engine bell rung before and while passing over the crossing, as well as the rate of speed at which the train approached the same.

APPEAL from the Circuit Court for *Jefferson* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

This is an action for damages sustained October 13, 1888,

at a street crossing of the defendant's railway track one mile east of its Watertown depot, and within the city limits but outside of the platted portion thereof. It appears from the undisputed evidence that the railway at that point runs a very little north of west and south of east, and is straight for two miles east of the crossing, and for more than 1,100 feet west of the crossing; that the street mentioned is what is known as the "Old Milwaukee Road," and crosses the railway at that point in a northwesterly and southeasterly direction, forming an acute angle of twenty-seven and one half degrees; that such highway had existed for about forty years, and is the main traveled thoroughfare from Pipersville to Watertown; that the railroad track for 275 feet east of the crossing is above the ground on the southerly side about four and one half feet; that at the end of that distance commences a cut which extends easterly for about 275 feet further, the deepest part of which is 400 feet from the crossing at the south right-of-way fence, where the top of the bank is six and three fourths feet above the level of the crossing; that from that point, which is about 600 feet east of the crossing, there commences a second cut, known as the "deep cut," which continues easterly beyond the whistling post, which is a quarter of a mile from the crossing; that the highest part of the embankment on the southerly side of that deep cut is about twenty-two feet above the track at a point about 1,100 feet east from the crossing; that the space between said right of way and the highway near and east of the crossing contained many trees, a house, barn, sheds, wood-pile, corn-crib, stacks, etc.; that the right of way at the crossing is about eighty feet wide, with a wire fence on both sides; that the highway is about fifty feet wide, with a board fence on the northeasterly side, with cattle-guards on each side of the crossing, and a plank crossing twenty-eight feet wide about midway between the two cattle-guards; that the regular leaving times for the passenger train in question were: From Milwaukee, 11:15

A. M.; from Ixonia (six miles east of this crossing), 12:46 P. M.; and from Watertown, 1:02 P. M.;—and that the plaintiff was at the time well acquainted with the time when the train usually passed.

There is testimony on the part of the plaintiff to the effect that on the day in question the plaintiff started from his home on said highway, four and one half miles east of this crossing, about 12:30 P. M.; that upon reaching the top of Koch's hill, so called, about one hundred rods east of the crossing, the railway track to the east could be seen for more than a mile; that he there looked carefully for approaching trains, but observed none; that, from that point up to the defendant's right of way, no view whatever of the track could be seen; that he drove slowly down the hill; that upon reaching the foot, and perhaps twenty or thirty rods distant from the crossing, his horses struck into a moderate trot, and continued in that way until well upon the defendant's right of way; that while coming down the hill, and from about the middle thereof until so reaching the right of way, he listened carefully but neither heard nor saw anything to indicate an approaching train; that after he left the stony portion of the hill the road was very dusty, and the wagon made but little noise; that immediately upon going onto the right of way, and somewhere between fifty and sixty feet from the crossing, he turned partially in his seat and looked east and listened for approaching trains, and continued to do so until his horses slowed down to a walk, but saw no train, nor sign of any train, approaching; that from that point the plaintiff could have seen the train, had it then been anywhere within at least 900 feet east of the crossing; that thereupon his horses took perhaps a few steps forward, but he could not say how many; when suddenly the near horse began dancing and jumping forward, and the off horse struck into a trot; that thereupon he drew up the reins, and took them well in

hand,— drew them up firmly, but did not try to stop the horses; that when his horses began to dance, jump, and trot as stated, he turned from looking up the track to see what had started them; that he first looked over his horses, to see if anything was the matter with the harness, but saw nothing; that he then looked in the direction of the city to the left,— to the west,— to see if any train was approaching from that direction, but saw nothing; that he then turned to look to the right-hand side, to see if anything or anybody had made any motion to start his horses up, but saw nothing; that then, fearing that perhaps some one had driven up behind him, and was attempting to drive past him on the right-hand side, he turned, and, as he brought his eyes back to the crossing he noticed that the forward feet of both his horses were very nearly in the center of the track; that he then looked eastward to see who had driven up to pass by him, and saw the engine coming down behind him, and, as he judged, 150 to 175 or 200 feet distant; that upon seeing the engine he pulled with all his strength upon the left rein to bring the horses off the track, knowing, if they made any progress forward, it was certain death to himself; that his eyes lingered just an instant on the engine; that he was horror-stricken to see it coming upon him; that he then turned to see if there was any possibility of saving himself; that he saw the near horse was entirely off the track, and the off horse had his forward feet only inside the rail about twelve to sixteen inches; that, while the off horse was in the act of turning away to avoid the engine, he saw the cow-catcher plow under his feet, and the forward part of the engine strike him; that he was himself then so near that, if he had had his right arm extended, he might have touched the driving wheel as it shot by him; that he shut his eyes, thinking he should be crushed under the wheels of the cars, and that that was the last he knew for hours afterwards; that from the time he got there, upon the

right of way, and until he looked around and saw the cars as stated, he heard no ringing nor whistling on the part of the train, and is positive that no signal was given, and that he heard no sound of any train; that the day was very quiet and warm; that a gentle breeze was blowing from the northwest; that he listened all the time — at least after he got within forty rods of the crossing, but heard nothing; that it was about 1:20 P. M. when the accident occurred; that the train got to Watertown depot at about 1:25 P. M.; that the train at the time was running very fast,— fifty or sixty miles an hour.

For the injury sustained by the plaintiff in his person, and to the horses, harness, and wagon, he brings this action. At the close of the trial the jury returned a verdict in favor of the plaintiff of $7,500, and from the judgment entered thereon the defendant appeals.

*John T. Fish,* attorney, and *H. H. Field,* of counsel, for the appellant, contended, *inter alia,* that under the testimony as to the speed of the team and of the train, and as to the view of the track, the train must have been in plain sight when the plaintiff was sixty feet from the crossing, and if he looked at that point he must either have seen it or looked so negligently and carelessly as not to see it. The testimony of the plaintiff that he looked and saw no train does not make a conflict of testimony sufficient to go to the jury. *Artz v. C., R. I. & P. R. Co.* 34 Iowa, 153, 159; *Bloomfield v. B. & W. R. Co.* 74 id. 607; *Carroll v. P. R. Co.* 12 Weekly Notes (Pa.), 348; *Pence v. C., R. I. & P. R. Co.* 63 Iowa, 746, 752–3; *Penn. R. Co. v. Bell,* 122 Pa. St. 58; *Marland v. P. & L. E. R. Co.* 123 id. 487; *Penn. R. Co. v. Mooney,* 126 id. 244; *Cleveland, C., C. & I. R. Co. v. Elliott,* 28 Ohio St. 340. Where the evidence shows that a view of the track can be had at any particular distance from the crossing, the presumption of law is either that the traveler looked and saw the train or that he did

not look; and in either case he is negligent. Shearm. & Redf. Neg. (4th ed.), sec. 476; *Cones v. C., I., St. L. & C. R. Co.* 114 Ind. 328; *Chicago & E. I. R. Co. v. Hedges,* 118 id. 5; *Wilcox v. R., W. & O. R. Co.* 39 N. Y. 358, 361; *Tolman v. S., B. & N. Y. R. Co.* 98 id. 198, 204; *Brown v. M. & St. P. R. Co.* 22 Minn. 165, 167; *Lesan v. M. C. R. Co.* 77 Me. 85. If the plaintiff looked at a place where, by reason of obstructions, an extended view of the track could not be had, and failed to look after coming to a place where the view was clear, such conduct is negligence which defeats a recovery. *Weyl v. C., M. & St. P. R. Co.* 40 Minn. 350; *Atchison, T. & S. F. R. Co. v. Townsend,* 39 Kan. 115; *Haines v. I. C. R. Co.* 41 Iowa, 227; *Salter v. U. & B. R. R. Co.* 75 N. Y. 273, 278–9; *Fletcher v. Fitchburg R. Co.* 149 Mass. 127; *Marty v. C., St. P., M. & O. R. Co.* 38 Minn. 108; *Freeman v. D., S. S. & A. R. Co.* 74 Mich. 86; *Winstanley v. C., M. & St. P. R. Co.* 72 Wis. 375, 383; *Cullen v. D. & H. C. Co.* 113 N. Y. 667. The plaintiff was negligent in driving rapidly upon the track without pausing or slackening his pace to look and listen for approaching trains. *Seefeld v. C., M. & St. P. R. Co.* 70 Wis. 216; *Salter v. U. & B. R. R. Co.* 75 N. Y. 273; *Weyl v. C., M. & St. P. R. Co.* 40 Minn. 350, 353; *Cones v. C., I., St. L. & C. R. Co.* 114 Ind. 328; *Connelly v. N. Y. C. & H. R. R. Co.* 88 N. Y. 346; *Schaefert v. C., M. & St. P. R. Co.* 62 Iowa, 624; *Haas v. G. R. & I. R. Co.* 47 Mich. 401; *Griffin v. C., R. I. & P. R. Co.* 68 Iowa, 638; *Mantel v. C., M. & St. P. R. Co.* 33 Minn. 62; *Powell v. N. Y. C. & H. R. R. Co.* 109 N. Y. 613. Those in charge of the train, after discovering the plaintiff on the highway, had the right to assume that he would not attempt to cross without looking or listening for trains, and that he would stop before crossing the track if a train was approaching. *Yancey v. W., St. L. & P. R. Co.* 93 Mo. 433; *Moody v. P. R. Co.* 68 Mo. 470, 473–4; *Dyson v.*

*N. Y. & N. E. R. Co.* 57 Conn. 9; *Warner v. N. Y. C. R. Co.* 44 N. Y. 465, 469; *Wabash, St. L. & P. R. Co. v. Krough,* 13 Bradw. (Ill.), 431; *Chicago, B. & Q. R. Co. v. Damerell,* 81 Ill. 450, 453. Negligence on the part of a railroad company in failing to give signals, or in running at a prohibited rate of speed, will not excuse a traveler from looking and listening, and he is not entitled to assume that the persons in charge of the train will observe all proper precautions on their part. *Abbot v. Dwinnell,* 74 Wis. 525, 526; *Kelley v. H. & St. J. R. Co.* 75 Mo. 138; *Railroad Co. v. Houston,* 95 U. S. 697; 1 Thomp. Neg. 426; *Calligan v. N. Y. C. & H. R. R. Co.* 59 N. Y. 651; *Schofield v. C., M. & St. P. R. Co.* 114 U. S. 615; *Gorton v. E. R. Co.* 45 N. Y. 660, 664; *Havens v. E. R. Co.* 41 id. 296, 299; *Ormsbee v. B. & P. R. Corp.* 14 R. I. 102; *Wabash, St. L. & P. R. Co. v. Wallace,* 110 Ill. 114; *Ernst v. H. R. R. Co.* 39 N. Y. 61, 68; *Harlan v. St. L., K. C. & N. R. Co.* 64 Mo. 480; *Union Pacific R. Co. v. Adams,* 33 Kan. 427; *State v. M. C. R. Co.* 76 Me. 357; *Kearney v. C., M. & St. P. R. Co.* 47 Wis. 144; *Schilling v. C., M. & St. P. R. Co.* 71 id. 255; *Williams v. C., M. & St. P. R. Co.* 64 id. 1.

For the respondent there were briefs by *E. P. Smith* and *F. B. Tuttle,* and oral argument by *Mr. Smith.*

CASSODAY, J. As indicated in the foregoing statement, there is evidence tending to prove that at the time of the accident the train was from fifteen to twenty minutes behind its regular time. One of the plaintiff's witnesses testified, in effect, that on the day of the accident he started from King's steam-mill, on First street, in Watertown, with a load of feed, for his home, *while the 1 o'clock whistles were blowing;* that he went on the street in question; that he passed the crossing, and met and passed the plaintiff at the foot of Koch's hill; that he got up over the hill, and neither

heard nor saw anything of the train.    Assuming the cred-
ibility of the witness, and the circumstances stated tend
strongly to prove that the train was considerably behind
the regular time.    The evidence on the part of the defend-
ant strongly tends to prove that the train left Ixonia at
12:50 P. M., and reached the place of the accident about
1 o'clock; but, of course, the jury had the right to believe
the witnesses on the part of the plaintiff instead of those on
the part of the defendant.    There is also a considerable
conflict in the evidence as to the speed of the train.    The
conductor testified that he ran from Ixonia to the crossing,
a distance of six miles, in ten minutes,— that is to say, at
the rate of thirty-six miles per hour,— which would be 900
feet in seventeen seconds.    Such a rate of speed within
the limits of the city was unlawful, and hence negligent.
Sec. 1809, R. S.; *Horn v. C. & N. W. R. Co.* 38 Wis. 463;
*Ewen v. C. & N. W. R. Co.* 38 Wis. 613; *Haas v. C. & N.
W. R. Co.* 41 Wis. 44; *Heddles v. C. & N. W. R. Co.* 74
Wis. 239; *Hooker v. C., M. & St. P. R. Co.* 76 Wis. 542. Since
such negligence contributed directly to the injury, it must
be regarded as having established the defendant's neg-
ligence.

But the principal controversy is whether the plaintiff
was guilty of contributory negligence in driving upon the
crossing as mentioned in the foregoing statement.    The
particular conduct of the plaintiff complained of is his fail-
ure to look in the direction of the coming train after reach-
ing a point within fifty feet of the crossing.    He testified
that he did look in that direction when between fifty and
sixty feet from the crossing; and other testimony tends to
prove that, from the point where he so looked, he could
have seen the train had it then been anywhere within at
least 900 feet east of the crossing.    The jury had the right
to believe that testimony, and evidently did.    Assuming
that testimony to be true, as we must on this appeal, and

77. JANUARY TERM, 1890. ·255

Piper vs. The Chicago, Milwaukee & St. Paul R. Co.

it follows conclusively that while the plaintiff was passing over the fifty or sixty feet the train passed over at least 900 feet; that is to say, the train was moving fifteen or eighteen times faster than the plaintiff. This being so, it follows that if the plaintiff was moving at the rate of three or four miles per hour then the train must have been moving at the rate of from forty-five to sixty miles per hour. The conductor testifies that applying the air-brakes when a train is running at the rate of thirty-five miles an hour will stop the train in a distance of about 600 feet; that this train ran about 620 feet after the air-brakes were applied. Had the train been running upon the statutory time of six miles an hour while passing over the 900 feet, and the other conditions had remained as assumed, it is very evident that the plaintiff would not only have safely crossed the track before the train reached it, but would have reached a point some two or three hundred feet beyond. This court has held, in effect, that, where a traveler on a public street in a city approaches a railway crossing, and nothing appears to the contrary, he may properly assume that a train is moving at a lawful rate of speed, and if it transpires that such speed was unlawful that fact may be taken into consideration in considering the question of contributory negligence. *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 489. The same rule has been sanctioned by other courts. *Loucks v. C., M. & St. P. R. Co.* 31 Minn. 526; *Thomas v. D., L. & W. R. Co.* 8 Fed. Rep. 732; *Newson v. N. Y. C. R. Co.* 29 N. Y. 383; *Penn. R. Co. v. Ogier,* 35 Pa. St. 72. This rule is really sanctioned by *Allen v. M. C. R. Co.* 19 Atl. Rep. (Me.), 105, cited by counsel for the defendant.

It is claimed as a matter of law that the plaintiff was not excusable, upon any theory, from omitting to look eastward along the track after getting within fifty feet of it, since every step of the team forward enabled him to see for a greater distance in the direction of the approaching

train, and since his horses were perfectly gentle and might have been stopped at any instant. But it is to be remembered that the plaintiff may have been lulled into a sense of security by thus failing to see the train when he did look, so that under all the circumstances stated we are unable to say, as a matter of law, that the momentary diversion of the plaintiff from looking in the direction of the coming train by reason of the conduct of his horses was not excusable. *Butler v. M. & St. P. R. Co.* 28 Wis. 487; *Bower v. C., M. & St. P. R. Co.* 61 Wis. 457; *Ferguson v. W. C. R. Co.* 63 Wis. 152; *Winstanley v. C., M. & St. P. R. Co.* 72 Wis. 375; *Duame v. C. & N. W. R. Co.* 72 Wis. 523; *Kellogg v. N. Y. C. & H. R. R. Co.* 79 N. Y. 72. In *Penn. R. Co. v. Ogier*, 35 Pa. St. 72, the evidence in support of the verdict against the claim of contributory negligence was weaker than in the case at bar, but the court said: " The theory that the deceased might have seen 623 feet along the railroad in the direction in which the train was approaching, from a point at which he might have stopped the progress of his horse and escaped danger, but did not see it until within 174 feet of him, if considered abstractly, and entirely unshaken by any or every other consideration, would have presented a strong case of negligence; but even then it would scarcely have justified a court in saying there was negligence, as a matter of law, when but seventeen seconds were allowed for action to the party in danger." The facts in the case at bar differ materially from those present in *Allen v. M. C. R. Co.* 19 Atl. Rep. (Me.), 105.

The contention of the able counsel for the defendant to the effect that the plaintiff was guilty of contributory negligence for not looking eastward when forty-eight feet or less from the track, and from a point where he might have seen the train approaching anywhere within 1,235 feet of the crossing, is peculiarly applicable to the engineer and

fireman operating the train, and of course, in law, equally to the defendant. · It was a part of their .duty to keep a lookout in the direction they were going, especially while passing over streets in a city at such a rate of speed. *Heddles v. C. & N. W. R. Co.* 74 Wis. 247. They could have stopped the train at any time, by applying the air-brakes, in a distance of 600 feet, even when running at the rate of thirty-six miles an hour. There is no evidence that their attention was diverted by anything. Had they looked, they certainly could have seen the plaintiff and his team approaching the track for the distance named; and yet, according to the testimony of the plaintiff, they neither gave any signal nor stopped the train, and, according to the conductor, they did not apply the air-brakes until "right near· the crossing, possibly right on it." We must hold that there is sufficient evidence to support the verdict, and consequently that there was no error in refusing to nonsuit the plaintiff or direct a verdict in favor of the defendant, or to set aside the verdict for want of evidence. What has been said above, and the authorities cited, fully dispose of the real controversy on this appeal, and also of the first, second, fifth, sixth, and seventh assignments of error in the charge.

Error is also assigned to that portion ·of the charge wherein the jury were, in effect, told (3) that although the statute did not require the defendant to blow the whistle at the whistling post, or at any place between it and the crossing, still, if those in charge of the train saw the plaintiff approaching the crossing and about to go upon the track, believing that he was unaware of the train's approach, it would be their duty to sound the whistle as well as to take every other reasonable precaution to prevent the collision. This portion of the charge is fully sustained by the recent ruling of this court in *Heddles v. C. & N. W. R. Co.* 74 Wis. 248, 249.

Error is also assigned to that portion of the charge

wherein the jury were, in effect, told (4) that it was the peculiar province of the jury to decide whether the whistle was blown at the whistling post, or the engine bell rung before and while passing over the crossing in question, as well as the rate of speed at which the train approached the same. We perceive no error in submitting such questions to the jury, when taken in connection with the whole charge, which was fair to both parties and covered the whole case.

*By the Court.*— The judgment of the circuit court is affirmed.