Corti, Respondent, vs. Cooney and another, Appellants.
Trussoni, Respondent, vs. Same, Appellants.

*November 12—December 7, 1926.*

*Appeal: Discretion of court as to conduct of trial: Trial: Misconduct of attorney: Examination of witness as to collateral matter: Impeachment: Pretending to offer certificate of conviction which examiner does not possess: Reversal of judgment.*

1. The conduct of a trial being largely within the discretion of the trial court, its determination will not be disturbed unless it clearly appears that the rights of parties have been prejudiced and that they have not had a fair trial.  p. 470.

2. An experienced trial lawyer, in his cross-examination of a defendant called adversely, asked her if she had been convicted of adultery at a designated time and place, and, upon objection to this question being sustained, offered in evidence a certified copy of such conviction. The paper offered was in fact a certified copy of a decree of divorce, and the court, when the situation was disclosed, did its best to meet it by instructions to the jury. *Held,* that the conduct of the lawyer was without shadow of justification, calculated to arouse prejudice, and the only way to deal with

such· misconduct is to ,set aside the verdict, because the case depended upon the credibility of the witnesses and the incident was devised to destroy the credibility· of one of the defendants.  p. 472.

3. Where a witness on cross-examination said she never drank, , which was collateral to the subject matter of the trial, the examiner could not offer evidence in impeachment that a witness had some time before seen her drunk.  p. 469.

4. The oath required of attorneys before being admitted to the bar is simply declaratory of the obligations resting upon every individual coming to the bar, whether he has taken the oath or not.  p. 471.

· APPEAL from two judgments· of the circuit court for La Crosse county: R. S. COWIE, Circuit Judge.  *Reversed.*

Personal injury.  Misconduct of attorney.  The plaintiffs, *Corti* and *Trussoni,* were traveling north on the main trunk highway known as the Mormon Coulee. road, in a motorcycle with sidecar.  The defendants were driving southerly on the same highway in an automobile.  The two vehicles collided and the plaintiffs sustained the injuries for which satisfaction is sought in these actions.  Separate actions were brought but were consolidated for purposes of the trial and are considered together on this appeal.  The jury found that the defendant *Kins* at the time of the collision was operating an automobile belonging to· the defendant *Cooney,* as her servant and under her personal direction, and that he failed to exercise ordinary care in the operation of the automobile he was driving, which was the proximate cause of the collision; that neither of the plaintiffs was guilty of contributory negligence, and assessed the amount of damages at the· sum of $1,833 in each case.  There were the usual motions, motions of the defendant were denied, and plaintiffs each had judgment upon the verdict.  From the judgments the defendants appeal.

For the appellants there was a brief by *George H. Gordon, Law & Gordon* of La Crosse, and oral argument by *George H. Gordon.*

*F. E. Withrow* of La Crosse, for the respondents.

ROSENBERRY, J.    It is contended here that as a matter of law the defendants were not guilty of negligence and that the plaintiffs were guilty of contributory negligence. We have examined the evidence and are of the opinion that a jury question is presented by the evidence upon both phases of the case. Inasmuch as there must be a new trial, we purposely refrain from further comment upon the evidence. Were it not for the matters now to be adverted to, the judgments should be affirmed.

The principal error assigned in the case arises out of the misconduct of the plaintiffs' attorney upon the trial. Prior to the beginning of the trial the defendant *Cooney* had been adversely examined under the provisions of sec. 4096, now sec. 326.12. Upon the opening of the trial the plaintiff read the deposition of the defendant *Helen Cooney* so taken. The examination was rigorous and exhaustive, especially upon collateral matters. Twelve other witnesses were then called, and the defendant *Helen Cooney* was called as a witness on the trial and as an adverse party under the statute and examined as follows:

"*Q. Miss Cooney*, what is your name?   *A. Helen Cooney.*
"*Q*. Were you married to Mike Correzzo in Chicago?
"Mr. George H. Gordon: Object to that.
"Court: Sustained.

"*Q*. Were you convicted on the 12th day of February, 1924, of adultery in the Auditorium Hotel in Chicago with one Mr. Weil?.
"Mr. George H. Gordon: Object to that.
"Court: Sustained.

"Mr. Withrow: I at this time wish to offer a certified copy of this conviction.
"Mr. George H. Gordon: Objected to.
"Court: Sustained.

"Mr. George H. Gordon: The jury should be instructed to disregard these insinuations.

"Court: The jury is instructed to disregard it; the question is entirely improper, has no bearing on the issues in this case."

The plaintiff then produced as a witness one John Fitzpatrick, who testified that he was a police officer of the city of La Crosse; that he saw *Helen Cooney* at the Winter Gardens during the winter of 1924 (the accident happened March 26, 1925), and his examination proceeded as follows:

"*Q.* Did you notice as to whether she was intoxicated, drunk or not? *A.* Yes, sir.

"Objected to. Sustained.

"Court: Strike out the answer. The jury will disregard it as having no bearing on the issue in this case.

"Mr. Withrow: As a matter of impeachment?

"Court: Oh, no.

"Mr. Withrow: She testified she never drank.

"Court: You can't call a witness for the purpose of impeaching them. Objection sustained."

Thereafter and at the close of plaintiffs' case the following proceedings were had:

"Mr. George H. Gordon: We desire that the jury be excused. There is a matter I want to call to the court's attention. (Jury retires.)

"Mr. George H. Gordon: On the attempted cross-examination of *Helen Cooney*, the counsel asserted he had a certificate of conviction of adultery. We request that that gentleman produce that certificate and have the court look at it, and if he hasn't such certificate that the court instruct the jury the introduction was improper.

"Court: This is not a certificate of conviction that she had been convicted of adultery. There is no conviction for adultery. This is not a certificate of conviction for adultery. That is a certified copy of a divorce.

"Mr. S. G. Gordon: With no appearance on behalf of the defendant.

"Mr. Withrow: 'That subsequent to their marriage the defendant had been guilty on the 12th day of February, 1924, in the Auditorium Hotel, Chicago, with one Mr. Weil.'

"Court: That is all right.

"Mr. George H. Gordon: That is a recital.

"Court: That is a recital in a divorce decree. She has never, according to that, been convicted so that it would be admissible in evidence.

"Mr. George H. Gordon: There wasn't any foundation.

"Mr. Withrow: There was basis, and I take, exception.

"Mr. S. G. Gordon: We ask that plaintiff's counsel be admonished not to make further reference to that matter again before this jury.

"Mr. Withrow: I don't think it is fair for the attorney on the other side to try to foreclose me from making reference.

"Court: The harm is done by making reference that you can't substantiate the evidence. You mustn't do it. If you do, you do it at your own peril. I shall have to instruct the jury very strongly on it."

In submitting the case to the jury the court gave the following instructions:

"In this case, during the testimony of the defendant *Helen Cooney*, some questions were asked of this defendant as to whether or not she had been convicted of the crime of adultery in the city of Chicago, and thereupon an instrument was offered in evidence which counsel for the plaintiff asserted was a certificate of conviction for adultery. The court has examined this instrument, and advises you and instructs you that this instrument does not, or is not a certificate of conviction of adultery, and the statement in that regard was not true, and you are further instructed that you are to entirely disabuse your mind of any consideration of that question.

"In a civil action it is often permitted, to test out the credibility of a witness, to ask them with regard to the commission of prior offenses or convictions of prior offenses. That doesn't go to the question of the merits of the case, however, at all, but is permitted in some cases merely that the jury may use that in testing the credibility of that particular witness. The issues here have nothing to do with the conviction of a prior offense. You are so instructed."

In response to the charge of misconduct on his part, plaintiffs' attorney makes the following excuse and justification:

"In the course of the trial the attorney for the plaintiffs introduced a certified copy of a divorce decree granted the husband of the defendant *Helen Cooney* on the grounds of

adultery, and which the attorney for the plaintiffs mistakenly informed the court was a copy of the conviction of defendant *Helen Cooney* of the crime of adultery. The evidence was rejected by the court, who instructed the jury that the remarks of the attorney for the plaintiffs were not true and should be entirely disregarded. The jury was not prejudiced thereby against the defendants.. If any prejudice entered at all because of these remarks, it would be against the attorney for the plaintiffs for making such statement."

After quoting the charge above set out he continues:

"The attorney for the plaintiffs in his argument to the jury admitted that defendant was never convicted of adultery, that he was mistaken as to the nature of the certified copy which he tried to introduce as evidence, and apologized to the jury if he had placed them under any misapprehension, and that it was unintentional. The defendant *Helen Cooney* testified on adverse examination that she doesn't drink and never did drink intoxicating liquor. The testimony of John Fitzpatrick was brought in, in an endeavor to impeach the credibility of the defendant *Helen Cooney* in that respect."

Having called *Miss Cooney* for cross-examination under the statute and having interrogated her in regard to collateral and immaterial matters, plaintiffs' counsel attempted to destroy her credibility by falsely pretending that he had and produced in court before the jury a certificate of conviction in a criminal case in which she was charged with adultery, and sought to impeach her testimony by showing by a police officer that at some previous time she had been intoxicated. The entire incident was well dramatized and calculated to arouse in the minds of the jury a strong suspicion that the defendant *Cooney* was a person of loose morals and belonged to a class of persons whose statements are received with great caution and by many individuals regarded as unworthy of belief. The attorney must have known and realized that it would be impossible for the defendant *Cooney* to present the true state of facts, as that would have amounted to a trial of a collateral issue. Being thus in-

trenched, he brought forward incompetent and immaterial matters in a manner well designed to break down her credibility and publicly scandalize her, in violation of established rules of procedure. 2 Wigmore, Evidence (2d ed.) p. 438, § 1005, and cases cited.

As has often been said, some allowance must be made for the stress and strain under which attorneys labor in a hotly contested trial. The conduct of the trial is largely within the discretion of the trial court, and the determination of the trial court will not be disturbed unless it appears clearly that the rights of parties have been prejudiced and that they have not had that fair trial which the law guarantees to every citizen in civil as well as in criminal matters. If, as counsel for plaintiffs contended upon the oral argument, the evidence so strongly preponderates in plaintiffs' favor that this court should say that the rights of the defendants have not been prejudicially affected, there was no reason for seeking adventitious aids in the conduct of the trial. As has been held, the evidence presents a jury issue both as to the negligence of the defendants and the contributory negligence of the plaintiffs. The determination of that issue must have been largely-affected by the weight which the jury gave to the testimony of the parties who were practically the only eye-witnesses of the accident. It is hard to imagine a device better designed to arouse prejudice in the minds of the jury than that adopted by plaintiffs' counsel. It is practically impossible for any person to disabuse his mind of the impression made by such unwarranted and unlawyerlike statements. It would do scant justice to the attorney to adopt his statement that he was mistaken and could not tell a decree of divorce from a judgment of conviction for crime. Such a statement is not only specious but assumes that the court is so credulous as to be gullible. An old and experienced lawyer, especially in the trial of jury cases, plaintiffs' attorney

must have known, and we must hold he did know, exactly what he was doing and exactly what the effect of his conduct upon the jury would be.

That the rights of the defendants were prejudicially affected cannot be doubted. While the trial court ruled promptly and adversely to plaintiffs, no adverse ruling could remove the impression made upon the minds of the jury by the proceeding set out herein. Having given the fatal wound, it is no excuse or justification to say that the knife was withdrawn and an apology made as soon as possible. Every attorney coming to the bar is required to take an oath, which is in part as follows:

"I will employ, for the purpose of maintaining the causes confided to me, such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law. . . .

"I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged."

The oath is simply declaratory of the obligations which rest upon every individual coming to the bar whether he has taken the oath or not. The whole purpose and scheme of our judicial system is to administer justice and deal with all litigants in a fair and impartial manner. An attorney who from the vantage point which he occupies in our judicial system uses his position to prejudice and mislead the court or jury is guilty of a double wrong: he brings disrepute upon the administration of justice and he wrongs the citizen who is the victim of his misconduct.

At first blush it may seem unfair that clients should be punished because of the misconduct of their attorneys. While in a technical legal sense attorneys are the agents of their clients and they are therefore responsible for their acts, the loss of their rights in cases of this kind should not be

Corti v. Cooney, 191 Wis. 464.

placed solely or mainly upon that ground.  Clients are the necessary, although in some instances they may be the unwilling, beneficiaries of such misconduct.  If misconduct operates prejudicially to one side it must operate beneficially to the other.  No case better illustrates the situation than this one.  Here a finding either for the plaintiff or the defendant should be sustained under the evidence as it stands in the record.  The whole matter therefore depended upon the credibility of the witnesses and the weight given by the jury to their respective statements.  That the incident was devised to destroy the credibility of *Helen Cooney* as a witness there can be no doubt.  That there was not a shadow of justification for it, plaintiffs' attorney now concedes but seeks to excuse and justify.  In case of doubt we have not reversed judgments where attorneys have been guilty of misconduct, but where as here conduct of attorneys appears clearly prejudicial and affects a material issue, it is our plain duty to reverse the judgment and direct a new trial by a fair and impartial jury free from the influence of any misconduct.  The trial court did its best to meet the situation, but it is considered that there is no effective way of dealing with misconduct of the character disclosed by this record except to set aside the verdict and procure an impartial and unprejudiced jury.  A reprimand to the attorney does not cure the wrong done to litigants.  These matters have been pointedly and repeatedly called to the attention of attorneys, and where attorneys indulge in conduct of the kind exhibited in this case they must do it with the knowledge that judgments secured by such methods cannot be approved by this court.

*By the Court.*—The judgment in each case is reversed, and causes remanded for a new trial.