RISSLING, Appellant, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Respondent.

*January 14—February 10, 1931.*

*I. B. Padway* of Milwaukee, for the appellant.

For the respondent there was a brief by *Shaw, Muskat & Sullivan,* and oral argument by *F. C. Quilty,* all of Milwaukee.

FRITZ, J. Plaintiff sued for damages to his person and his automobile, sustained in a collision with defendant's street car, which he charged was operated in such negligent manner as to cause his damage. That the street car came into contact with the rear end of plaintiff's automobile was not disputed. The evidence presented issues of fact for determination by a jury as to the alleged negligence of each of the parties and also as to the amount of plaintiff's damages. The jury, by special verdict, found in favor of the defendant as to all issues, but instead of assessing plaintiff's damages as instructed, erroneously answered that plaintiff sustained none. That answer was clearly contrary to the evidence, which established that plaintiff did sustain some pecuniary loss as a result of the collision.

During the trial defendant's motorman and conductor testified that at the time of the collision (which occurred at about 9:30 p. m.) plaintiff was not sober, and that he looked as if he had been drinking. That evidence was contradicted by testimony introduced by plaintiff. Whether he was intoxicated at that time was of considerable significance in passing upon the issues of negligence. After plaintiff had introduced his evidence on rebuttal and had rested, de-

fendant's counsel, Mr. Quilty, called as his witness Charles
Kuchler, a police officer in uniform, and asked him:

"Did you examine the police reports in the Third precinct
in regard to the arrest and conviction of Otto Rissling for
drunk and disorderly conduct?"

Plaintiff's counsel objected, and, after discussion, the question was stricken and the jury instructed to disregard what
had been said. Then the following occurred:

"The Court: What do you expect to prove?
"Mr. Quilty: I want to show that he was drunk and disorderly on the—he was arrested for disorderly conduct on
the night of the accident. . . .
"The Court: If he can prove that, we will hear it.
*A*. This is no copy—this is the record.
"The Court: The record kept in the Third precinct?
"Mr. Padway: Were you the arresting officer? *A*. I was
not.
"Mr. Quilty: *Q*. Will you read this record straight
through here and tell—first, who was the man that was arrested?
"Mr. Padway: We object to that as not being proper.
"The Court: We have got all this insinuation, we might
as well have the actual record.
"Mr. Padway: It is highly prejudicial—here is where an
attorney comes up and makes a statement—
"The Court (interrupting) : He is trying to prove it from
a record.
"Mr. Padway: I say it is not competent evidence.
"The Court: An arrest at any other time for a crime
other than a misdemeanor could be proven, to affect his
credibility, and this was for a violation of a city ordinance,
and it has been stated that it was on this day; if it is on this
day that this charge of drunkenness was made—
"Mr. Quilty: *Q*. On what day was Otto Rissling arrested? *A*. The record shows Otto Rissling, 3524 Vliet
street, arrested at 1:50 a. m.—he was put in cell 13. . . .
"The Court: Finish your statement—which day was it?
*A*. August 11th.

"*Q.* At what time? *A.* At 1:50 a. m. Registered here as a fireman by occupation, railroad, married, disorderly conduct. The arresting officer is DeWitt Seaman, who is home with pneumonia.

"Mr. Padway: We ask that all that testimony be stricken in relation to that and the jury instructed to disregard it.

"The Court: Now, this is the same night that this occurred—this occurred at half-past nine, and this is that same night at 1:50 in the morning.

"Mr. Quilty: I think that is competent evidence.

"*A.* He was fined $10 and costs.

"Mr. Padway: I want this record to show we object to all this testimony, your Honor, as being highly prejudicial.

"The Court: I understand—your objection may stand. Objection overruled.

"Mr. Padway: Let me see that record just a moment.

"*Q.* Now, counsel asked you whether or not he was arrested for drunk and disorderly—this record only shows 'disorderly.' *A.* That is all that I stated in my statement.

"*Q.* You don't know the circumstances—why he was arrested? (No answer.) "

Upon motions after verdict, and on appeal to the circuit court as well as to this court, plaintiff contended that the manner in which defendant's counsel presented to the jury the alleged conviction for disorderly conduct was such as to so inflame and prejudice the jury that plaintiff did not have a fair trial of the issues presented by him.

Defendant's counsel was clearly in error in attempting to prove that plaintiff was intoxicated, by having a police officer who made neither the arrest nor the alleged entries upon a police precinct record, testify as to such entries. The witness called was not competent to identify the report. He did not make it and could not even use it as a memorandum to refresh his recollection, because he was not the arresting officer and had no personal connection with or knowledge of the matters set forth in the report. The entries were not competent evidence to prove a subsequent conviction and

fine, and a record charging disorderly conduct merely, did not warrant the repeated disparaging insinuations by defendant's counsel as to an arrest and conviction for drunk and disorderly conduct. The direct derogatory bearing of those insinuations as to plaintiff's condition and conduct on the night of the collision, and the manner in which defendant's counsel injected them into the case at the very close of the trial, justify the conclusion that the situation "was well dramatized and calculated to arouse in the minds of the jury" prejudice against the plaintiff. *Corti v. Cooney,* 191 Wis. 464, 211 N. W. 274.

Although the mere failure of a jury to assess damages on a trial during which nothing improper occurred to prejudice the jury does not necessarily indicate such prejudice or perversity as to necessitate the granting of a new trial (*Miner v. Rolling,* 167 Wis. 213, 167 N. W. 242; *Paul v. Pfefferkorn,* 172 Wis. 61, 64, 178 N. W. 247), when there has been such improper conduct, and that is followed by a verdict that indicates that the offending counsel has succeeded in prejudicing the jury to his advantage, courts should freely set aside the verdict and grant a new trial in the interests of justice.

"A reprimand to the attorney does not cure the wrong done to litigants. These matters have been pointedly and repeatedly called to the attention of attorneys, and where attorneys indulge in conduct of the kind exhibited in this case they must do it with the knowledge that judgments secured by such methods cannot be approved by this court." *Corti v. Cooney, supra.*

*By the Court.*—Judgment reversed, and cause remanded for a new trial.