REINKE, Appellant, vs. CHICAGO, MILWAUKEE, ST. PAUL &
PACIFIC RAILROAD COMPANY, Respondent.*

*November 19—December 23, 1947.*

* Motion for rehearing denied, with $25 costs, on February 17, 1948.

For-the appellant there were briefs by *Johnson & DeBaufer* of Whitewater, and oral argument by *Easton Johnson* and *Robert DeBaufer.*

For the respondent there was a brief by *Bender, Trump & McIntyre,* attorneys, and *Rodger S. Trump* of counsel, all of Milwaukee, and oral argument by *Rodger S. Trump* and *Rodger M. Trump.*

BARLOW, J.    The crossing in question was a public-traveled grade crossing in the city of Delavan, where the speed limit of railroad trains is fifteen miles per hour.   Sec. 192.29 (1), Stats.    The jury found the Railroad Company guilty of

causal negligence as to speed and failure to blow the whistle, and found deceased Reinke guilty of no negligence. On the question of apportionment of negligence between the deceased and defendant, the jury found defendant Railroad Company guilty of seventy-five per cent of the negligence and deceased, William A. Reinke, guilty of twenty-five per cent of the negligence that caused the death. On motions after verdict the court changed the answers of the jury to the questions of negligence on the part of the deceased Reinke and found him guilty of causal negligence in failing to look and listen.

Counsel for appellant argues that the court was in error in changing the answers, and cites cases which uphold the rule that it is the duty of defendant to signal the approach of a train if in the exercise of ordinary care it is required to do so. This does not answer the question of negligence of the deceased driver. The collision occurred on a clear day about 1 o'clock in the afternoon with no other traffic on the street to interfere with his view. In the case of *Clemons v. Chicago, St. P., M. & O. R. Co.* (1909) 137 Wis. 387, 392, 119 N. W. 102, the court said:

"Next in order is the principle that a railroad track is such an admonition of danger that he who approaches it at a highway crossing with knowledge thereof, intending to cross the same, must use his senses of sight and hearing to discover whether there is any reasonable probability of his placing himself in dangerous proximity to a moving train if he proceeds; that he is not only bound to look and listen to discover whether a train is dangerously near or not, but is bound to make the discovery of one if there be such plainly visible, or plainly within hearing, and to use his senses in that regard at the last opportunity before going upon the track, and that mere diversion of attention will not excuse nonperformance of these duties."

The train involved in the collision was a heavy freight train of more than one hundred cars. Of necessity it made considerable noise, and a number of witnesses testified to this fact.

In *Waitkus v. Chicago & N. W. R. Co.* (1931) 204 Wis. 566, 568, 236 N. W. 531, 237 N. W. 259, the court said:

"Therefore it has come to be as well settled in the jurisprudence of this country that the traveler must exercise his senses to discover the approach of a train when he attempts to cross a railroad track as that a contract requires a consideration, and probably with greater reason."

Counsel for appellant argues the court was in error in his memorandum of opinion in comparing the speed of the train with the speed of the truck, using fifteen miles per hour as the speed of the truck. All of the testimony is that the truck was traveling slowly, and the witnesses who estimated the speed of the truck fixed it at about fifteen miles per hour. It was stipulated the train was traveling at forty-five miles per hour. The trial court reasoned that the train was traveling approximately three feet while the truck traveled one foot, but we are unable to see where this affects the question of negligence on the part of the deceased driver to look and listen. The evidence shows the deceased driver failed to look and listen for the approaching train before attempting to cross the railroad tracks, which was his absolute duty. *Keegan v. Chicago, M., St. P. & P. R. Co.* (1947) 251 Wis. 7, 27 N. W. (2d) 739; *Bellrichard v. Chicago & N. W. R. Co.* (1945) 247 Wis. 569, 577, 20 N. W. (2d) 710; *Waitkus v. Chicago & N. W. R. Co., supra; Clemons v. Chicago, St. P., M. & O. R. Co., supra.* We conclude the trial court properly changed the answers on the question of negligence of the deceased driver.

Defendant, on its motion for review, contends the negligence of the driver amounts to fifty per cent or more as a matter of law, and the court was in error in failing to change the answer of the jury to question 2, where it found the speed in excess of fifteen miles per hour was a cause of the accident, and the answer to question 5, that defendant's employees failed to exercise ordinary care with respect to sounding the whistle, and the answer to question 6, where it was found this failure to sound

the whistle was a cause of the accident. Defendant argues the driver of the truck was guilty of negligence as to lookout and failing to listen, which we have hereinbefore held.

Defendant was guilty of negligence as to speed, it having been stipulated the train was traveling forty-five miles per hour in a fifteen-mile zone. It is argued the speed of the train was not a cause of the accident and to hold otherwise would permit the jury to speculate. The cases of *Brager v. Milwaukee E. R. & L. Co.* (1936) 220 Wis. 65, 264 N. W. 733, and *Umlauft v. Chicago, M., St. P. & P. R. Co.* (1940) 233 Wis. 391, 289 N. W. 623, are relied upon. In the *Brager Case* the driver failed to look and the court held the speed of the train was not a cause of the accident because the driver did not see the train and would not have seen it no matter at what rate of speed it was traveling. Here we have a dangerous crossing where a driver approaching has the right to assume the train will be traveling at a lawful rate of speed until such time as he is in position to see the train and observe its speed. Negligent speed is not necessarily a cause of an accident, but there are many instances where it can be a cause. In the *Bellrichard Case, supra*, it was said:

"The illegal speed of the train may, as in the *Ellis Case,* enable it to reach the crossing from behind a curve or other obstruction beyond which plaintiff may have no reason to expect that a train will interfere with his crossing, or as in the same case, the illegal rate of speed may disable the engineer after coming in sight of the crossing from bringing his train to a stop upon observing the peril of plaintiff."

Train speeds have been greatly increased in recent years, all of which is necessary in order to meet schedules which the traveling public demand. Not many years ago a passenger train with a schedule that averaged thirty miles an hour was considered a fast train, but today we have numerous passenger trains with schedules which average sixty miles an hour, or a mile a minute, including all stops and other required delays in its operation. This means these trains travel at approxi-

mately one hundred miles an hour during a portion of the time of travel. Many of these trains are not scheduled to stop at villages and small cities, and therefore travel through such communities at a rate of speed consistent with their general schedules. A traveler approaching a crossing can gauge the speed of a train and make observations for his own safety if the train is traveling at a reasonable rate of speed, but to require him to do so when trains are traveling at the rate of speed that many of them do at this time, especially at village and city street intersections, places an extreme burden on the traveler if we are going to follow defendant's contention that an adequate warning of the approach of a train relieves the railroad company from responsibility as to speed even though it be in violation of the law. While the duty of the person using the highway to look and listen is absolute, it was said in the *Bellrichard Case, supra,* that—

"In some cases, as for example that of *Webster v. Roth,* 246 Wis. 535, 18 N. W. (2d) 1, the extremely high speed of the train, combined with its silent operation and failure to sound appropriate warnings, may contribute to cause a collision either by inducing plaintiff to take an insufficiently extended view of the tracks or by misleading plaintiff as to the train's actual speed."

The traveler on the highway is in no position to look until he can see, nor to listen until he can hear under the existing conditions. While the men in charge of the railroad engine have a right to assume the person approaching the crossing will look and listen, and stop his automobile or other vehicle in case of danger, nevertheless if he is about to go upon the track and they believe or have reason to believe he is unaware of the train's approach it is their duty to sound the whistle as well as to take every other reasonable precaution to prevent the collision. *Webster v. Roth, supra; Heddles v. Chicago & N. W. R. Co.* (1889) 74 Wis. 239, 42 N. W. 237; *Piper v. Chicago, M. & St. P. R. Co.* (1890) 77 Wis. 247, 46 N. W. 165. In this case the deceased driver approached the crossing at a slow

speed.  There were no skid marks to show he slowed down to indicate he was going to give the right of way to the train. The brakeman, who was occupying the fireman's seat and was the only person charged with responsibility as to lookout, testified that when he saw the truck within fifteen feet of the track the train was so close to it there was no opportunity to give an additional warning.  He testified earlier that he saw the truck when it had passed the residence and came into view.  He had an opportunity to observe it traveling the intervening distance. While we do not hesitate in stating that the deceased driver of the truck was guilty of a very substantial amount of negligence, we agree with the trial court that under all the facts in this case the apportionment of the negligence of the parties is a jury question.

*By the Court.*—Order affirmed.

FOWLER, J., took no part.