DeRousseau and another, Respondents, vs. Chicago, St. Paul, Minneapolis & Omaha Railway Company, Appellant.*

*October 12—November 15, 1949.*

---

\* Motion for rehearing denied, with $25 costs, on December 30, 1949.

20

*John E. Krueger* of Milwaukee, for the appellant.

For the respondents there was a brief by *Coe & Cameron* of Rice Lake, and oral argument by *William A. Cameron.*

FAIRCHILD, J. On appeal the defendant contends that as a matter of law the excessive speed of the train, which was traveling eighty to ninety miles an hour, was not a cause of the accident. The jury found that such speed was causal and

the trial court has upheld that finding. Ruling on motions after verdict, he said:

"The engineer testified that when he was approaching two hundred feet east of the crossing he saw the lights of the truck approaching from the south along the highway. He fixed the distance of the truck from the south track at seventy-five feet when he first observed it, and its speed at twenty to twenty-five miles per hour. . . .

"Is this a sufficient distance within which to permit the deceased to judge the speed of the train and make a timely and adequate appraisal of the situation? At twenty miles per hour, it would be, but at eighty to eighty-five miles per hour, it is a proper question for the jury as to whether or not the speed was a cause of the collision."

Defendant claims that this reasoning of the trial court is wrong. He bases his argument on the fact that the trial court assumed that, since the engineer of the train could not see the truck because of obstructions until he was two hundred feet from the crossing and deceased seventy-five feet away from the south track, deceased could not have seen the train until the same time because of the same obstructions. Defendant points out that at certain distances there were different opportunities for observation: At one hundred seventy-seven feet from the westbound main-line track, the deceased could have seen two hundred one feet up the track; at one hundred twenty-five feet he could have seen three hundred feet; and at seventy-five feet he could have seen four hundred feet. That this argument does not take into consideration all the evidence is readily apparent. Although deceased might have been able to see two hundred one feet up the track when he was one hundred seventy-seven feet away, he could not have seen the train because it was much farther away. Its engineer testified that he saw the truck when it was seventy-five feet from the track and, at that time, the train was approximately two hundred feet from the crossing. Therefore, even when deceased was one hun-

dred twenty-five feet away and could see three hundred feet up the track, the train, which was traveling at a speed approximately three times as great as the truck, was not in view because of the obstructions.

Defendant further contends that because the train had given warning of its approach its illegal speed could not be causal because the deceased had an absolute duty to look and listen. *Keegan v. Chicago, M., St. P. & P. R. Co.* (1947), 251 Wis. 7, 27 N. W. (2d) 739; *Bellrichard v. Chicago & N. W. R. Co.* (1945), 247 Wis. 569, 20 N. W. (2d) 710; *Waitkus v. Chicago & N. W. R. Co.* (1931), 204 Wis. 566, 236 N. W. 531, 237 N. W. 259; *Clemons v. Chicago, St. P., M. & O. R. Co.* (1909), 137 Wis. 387, 119 N. W. 102. While speed standing alone cannot be the cause of a crossing accident, such speed can be the cause in combination with other circumstances. *Bellrichard v. Chicago & N. W. R. Co., supra,* and cases cited therein. There is evidence of the unlawful speed at which the train was traveling. It was moving about three times as fast as the deceased in his truck was traveling. There is also evidence that certain buildings obstructed the view for some distance of the track on which the train was approaching. As there is to be a new trial we will not recite the evidence or do more by way of comment than to say that, at the points of observation, a train coming at a lawful rate of speed would not interfere with or prevent an adequate calculation by the traveler on the highway of the speed of the train. In *Reinke v. Chicago, M., St. P. & P. R. Co.* (1947), 252 Wis. 1, 7, 30 N. W. (2d) 201, it was said:

"A traveler approaching a crossing can gauge the speed of a train and make observations for his own safety if the train is traveling at a reasonable rate of speed, but to require him to do so when trains are traveling at the rate of speed that many of them do at this time, especially at village and city intersections, places an extreme burden on the traveler if we

are going to follow defendant's contention that an adequate warning of the approach of a train relieves the railroad company from responsibility as to speed even though it be in violation of the law."

Because of the speed and obstructions it is considered that a jury question existed as to the causal connection between the excessive speed of the train and the accident.

This case is to be distinguished from that of *Riley v. Chicago & N. W. R. Co.* (1949), 255 Wis. 172, 38 N. W. (2d) 522, in which no serious obstructions to the driver's view existed and in which the credible testimony placed the train's speed at half that of the train in this case.

Defendant's next claim is that the negligence of deceased was as great or greater than the negligence of defendant. The jury found deceased guilty of more than a slight want of ordinary care. Certainly deceased was guilty of negligence. On this state of facts the question of proportional contribution was a close one and therefore within the competency of the jury to determine. It is considered that under the evidence in the record it may not be held as a matter of law which was the greater contributor. The situation leaves to the jury's determination, after a fair trial, the proper proportions of negligence to be assessed against each.

However, a serious and controlling question arises because the apportionment of negligence by the jury should have been arrived at from a consideration of the evidence free from passion and prejudice caused by improper argument of counsel for plaintiff.

In his statement to the jury at the close of the testimony, counsel for plaintiff indulged in remarks, which are within the rule that an improper appeal to prejudice because of the wealth of a party or because it is a corporation or a corporation of a particular class is a sufficient ground for a new trial. 39 Am. Jur., New Trial, p. 74, sec. 57.

All that was said is not preserved, but from the statements, objections, and rulings by the court it sufficiently appears that counsel made some reference to the fact that the crew of the train on the siding next to the westbound track were not among the witnesses. It does appear that the only eyewitness to the collision who testified was the engineer running train No. 401. The effect of that and other statements will appear from the following brief recital quoted from the record:

"Mr. Cameron . . . sums up the case to the jury.

"Mr. Doar: I object to counsel's inquiring what happened to the crew of '401.' There isn't any evidence in the case that they knew anything about it at all.

"The Court: The jury is instructed at this time that the case is to be decided solely on the evidence as they recall it and that statements of counsel which they find in contradiction with the evidence are to be disregarded.

"Mr. Cameron: I think a poor man with a poor lawyer is entitled to the same kind of justice as the man that has got the money or the ability to hire a good lawyer. I don't think the lawyers have anything to do with it.

"Mr. Doar: We object to that statement.

"The Court: The jury are instructed that the respective counsel are not on trial and have nothing to do with the case except to present the case to you and no feeling of sympathy or prejudice that you may have for the respective counsel is to be allowed to influence you in any way in deciding the case.

"Mr. Cameron: If I drive a car down the streets of Baldwin at ninety (90) miles an hour, I am going to be defending a murder case.

"The Court: The jury is instructed to disregard that reference to a murder charge.

"Mr. Cameron: If I drive my car down the streets of Baldwin at ninety (90) miles an hour and run into and kill a man, what is going to happen?

"Mr. Doar: We object to that statement as prejudicial.

"The Court: Overruled."

The jury was then excused until the following morning when the case was submitted to it.

A fair result depended upon the jury approaching their decision without being stirred by improper argument tending only to arouse their passion and prejudice. There was a strong suggestion of defendant's wealth, of negligent acts amounting to murder, which only could have been calculated to distract the jury's attention from the real issue of injury resulting from failure to exercise ordinary care. It is not possible for us to calculate the exact influence these statements had on the jury. In the first two instances the judge instructed the jury, but none too vigorously, to disregard the statements; as to the last remark, which was in effect a comprehensive reminder of all that had been said, the court overruled the objection to it. We are convinced that the language of counsel was an appeal to the prejudice of a jury and that, under the rules governing, it is our duty to order a new trial. *Georgeson v. Nielsen* (1935), 218 Wis. 180, 260 N. W. 461; *Rissling v. Milwaukee E. R. & L. Co.* (1931), 203 Wis. 554, 234 N. W. 879; *Corti v. Cooney* (1926), 191 Wis. 464, 211 N. W. 274; *Hall v. Rice* (1929), 117 Neb. 813, 223 N. W. 4; 39 Am. Jur., *supra*.

· At this point a quotation from *Horgen v. Chaseburg State Bank* (1938), 227 Wis. 510, 279 N. W. 33, in which a new trial was granted because of prejudicial remarks of counsel, is pertinent. At page 517 it is said:

"Granting of new trials is not encouraged, and there are many cases where counsel have overstepped the bounds of propriety and new trials have not been granted. These cases are cited by plaintiff in his brief, and we have considered them. They are consistent with the rule here applied. Language in the opinions does no more than point out instances which may be recognized as not requiring the application of the rule. See *Kiekhofer v. Hidershide,* 113 Wis. 280, 291; 89 N. W. 189.

"An early discussion of the rule is found in *Brown v. Swineford,* 44 Wis. 282, 293. It was there held error sufficient to reverse a judgment for counsel against objection to

state facts pertinent to the issue but not in evidence, or to assume arguendo such facts to be in the case when they were not, and also to impute facts not pertinent to the issue, but calculated to prejudice the case. The rule was considered and applied in *Green v. Ashland Water Co.* 101 Wis. 258, 77 N. W. 722; *Corti v. Cooney,* 191 Wis. 464, 211 N. W. 274. In the *Brown Case* Mr. Chief Justice RYAN said:

" 'The profession of the law is instituted for the administration of justice. The duties of the bench and bar differ in kind, not in purpose. The duty of both alike is to establish the truth and to apply the law to it. It is essential to the proper administration of justice, frail and uncertain at the best, that all that can be said for each party, in the determination of fact and law, should be heard. Forensic strife is but a method, and a mighty one, to ascertain the truth and the law governing the truth. . . . The very fullest freedom of speech within the duty of his profession should be accorded to counsel; but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing, and appealing to prejudices irrelevant to the case and outside of the proof. It may sometimes be a very difficult and delicate duty to confine counsel to a legitimate course of argument. But, like other difficult and delicate duties, it must be performed by those upon whom the law imposes it. It is the duty of the circuit courts, in jury trials, to interfere in all proper cases of their own motion. This is due to truth and justice. And if counsel persevere in arguing upon pertinent facts not before the jury, or appealing to prejudices foreign to the case in evidence, exception may be taken by the other side, which may be good ground for a new trial, or for a reversal in this court.'

"In certain cases such as *Lehner v. Chicago, M., St. P. & P. R. Co.* 204 Wis. 558, 236 N. W. 572, where the appeal to prejudice was in the nature of eloquent exaggeration of the evidence, the remarks were not considered prejudicial to a degree requiring a reversal; the verdict on the main issue being amply supported by the evidence. In such cases as *Neumeister v. Goddard,* 133 Wis. 405, 113 N. W. 733, where this court felt that more vigorous action on the part of the trial court should have occurred, we deferred to the judgment of the trial judge in holding the error not preju-

dicial, but in the case now before us, the probabilities of either side being right are so nearly equal that the unwarranted insinuations of counsel resulted in a prejudice against defendant which may have affected the outcome. We think that it was an abuse of discretion on the part of the trial judge not to grant a new trial."

*By the Court.*—Judgment reversed. Cause remanded with directions to grant a new trial.

BROADFOOT, J., dissents.